Oscar **CLARKE**

v.

**BROCKWAY MOTOR TRUCKS,** a division of **Mack Trucks, Inc.**

**Civ. A. No. 71–1307.**

United States District Court, E. D. Pennsylvania.

Feb. 15, 1974.

Edward L. Wolf, Philadelphia, Pa., for plaintiff.

E. Paul Maschmeyer, Joseph H. Foster, Harry F. Brennan, Sidney L. Wickenhaver, Lynn L. Detweiler, Philadelphia, Pa., for defendant.

OPINION

BECHTLE, District Judge.

This is a products liability case based on diversity of citizenship of the parties. The trial of the issues was bifurcated on the questions of liability and damages. After returning a verdict for the plaintiff on the issue of liability, the jury heard evidence as to damages and awarded plaintiff $89,650 as compensation for injuries sustained. The defendant has filed a motion for judgment notwithstanding the verdict and, in the alternative, a motion for a new trial.

The following facts were basically uncontradicted at trial: Plaintiff, Oscar Clarke, testified that at the time of the accident which gave rise to this litigation he was employed as a truck driver by National Freight Company ("National"). The truck which Clarke was driving was a tractor manufactured and sold by the defendant Brockway Motor Trucks ("Brockway") to Landis Leasing, Inc. ("Landis"), who in turn furnished such truck to plaintiff's employer, National.[1]

On June 23, 1969, shortly after midnight, plaintiff departed from Lawnside, New Jersey, in a tractor-trailer[2] with a destination of Altoona, Pennsylvania. Prior to the departure from Lawnside, the tractor-trailer had been inspected by employees of National. Such an inspection is mandated by regulations promulgated by the Interstate Commerce Commission ("ICC"). The evidence indicated that plaintiff arrived in Altoona at approximately 4:30 a. m. After unloading at the Altoona truck terminal, Clarke proceeded to New Stanton, Pennsylvania, a distance of 75 to 80 miles, arriving at New Stanton at about 3:30 p. m. Plaintiff was then assigned another load which he was to take from New Stanton to Bridgeton, New Jersey. Upon the completion of another mandatory pre-departure inspection, plaintiff and seven other drivers left the New Stanton terminal and began the trip to the same destination in New Jersey.

Plaintiff testified that he was traveling south on Route 119 on a downgrade approximately 30 to 35 miles per hour and at about five truck lengths behind the truck driven by one David Williams, a fellow driver of plaintiff's. Upon approaching a slight curve in the highway, plaintiff attempted to apply the brakes. Clarke stated that he depressed the brake pedal but found that the brakes were not working. An attempt to slow the tractor-trailer by the use of the "trolley" brakes, which are the brakes on the trailer, also proved unsuccessful. Unable to make the curve, the truck left the highway, went over the shoulder of the road and onto an adjacent field, where the truck overturned and the plaintiff sustained serious injuries.

Between the time the plaintiff departed from the New Stanton terminal and the occurrence of the accident on Route 119, he encountered no necessity to apply the brakes. During this short span of time and distance, it was necessary to decrease the speed of the vehicle, but Clarke accomplished this by downshifting the gears on the tractor and not by applying the brakes.[3] Plaintiff testified that before leaving the terminal the air pressure gauge registered 65 pounds, which in his opinion rendered the truck operable from the viewpoint of sufficient air pressure in the braking system.

---

1. Plaintiff operated the tractor under a relatively complex lease arrangement through which he leased the truck from Landis Leasing, Inc. while employed as a driver by National Freight Company. The precise nature of the plaintiff's employment relationship bears no legal significance whatsoever to the resolution of the issues contained in the instant litigation.

2. The trailer was neither built nor supplied by Brockway Motor Trucks. It is not unusual for the tractor and trailer to be manufactured by different concerns.

3. David Williams, witness for the defendant, testified on direct examination that a stop sign was located on Route 119 between the terminal and the scene of the accident. We must assume that the jury concluded that Clarke either slowed the vehicle by downshifting the gears and without resorting to the brakes, or that he did not stop at all, if indeed there were a stop sign.

Officer Charles E. Arrigo, of the Pennsylvania State Police, testified as a witness for the plaintiff. The trooper stated, essentially, that at the time of the accident rain was falling and the roadway was wet. The witness indicated that he found no skid marks at the scene but admitted that the falling rain could have obliterated the skid marks, if in fact there had been any at the time of the accident.

The plaintiff introduced testimony indicating that on June 23, 1969, he had owned the Brockway tractor for 18 days, having acquired it new through the aforedescribed lease arrangement with Landis and that during the period of time prior to the accident he had driven the tractor some 5,000 miles. It was testified by Clarke that he experienced no brake problems from the time of purchase until the accident on June 23, 1969.

Defendant Brockway offered seven witnesses who principally testified as to the absence of brake problems from the time the Brockway tractor left the assembly plant in Courtland, New York, during its delivery to Philadelphia and then to Lawnside, New Jersey, and through the inspection processes, including the testing of the brakes following the repair of the tractor. Specifically, James Yonta testified that he drove the tractor in question from Courtland to Philadelphia, Pennsylvania, and experienced no trouble with the brakes. The truck was then placed under the control of William Butcher, who made several changes in the vehicle which were requested by the customer, and then personally drove the truck to the National terminal in New Jersey. Henry Harter, a National mechanic, testified that he had inspected the tractor immediately prior to its departure from the New Stanton terminal and found that it satisfied all the necessary safety and operational requirements of the ICC, including an inspection of the braking system. The deposition of Preston Frampton, National shop foreman, was introduced to establish that following the repair to the tractor, the vehicle was road tested and the brakes were found to be in perfect operating condition.

Finally, David Williams, the driver of the truck that had preceded the plaintiff's along Route 119, testified that immediately prior to the accident Clarke signaled that he wanted to pass. Williams maneuvered his truck partially onto the right-hand shoulder of the road to enable Clarke to pass on Williams' left. Williams testified that, after the plaintiff's truck passed, he (Williams) blinked his headlights to indicate that there was sufficient space for Clarke to move back into the line of traffic in front of Williams. Plaintiff, in keeping with the custom of over-the-road truck drivers, blinked his rear flashing lights acknowledging his thanks for the courtesy extended by Williams in the passing maneuver. Williams stated that it was at this point in time that the plaintiff's truck left the road.

The first issue raised by defendant in support of the respective motions is that plaintiff failed to prove by the preponderance of the evidence that the brakes in the Brockway tractor failed and that such failure proximately caused the accident.

Section 402A of the Restatement of Torts 2d, adopted as the law of Pennsylvania in Webb v. Zern, 422 Pa. 424, 220 A.2d 853 (1966), provides, in pertinent part:

"Special liability of seller of product for physical harm to user or consumer (1) one who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."

■ The law of Pennsylvania is that a plaintiff in a strict liability case can establish a "defective condition" within the meaning of § 402A by proving that the product functioned improperly in the absence of abnormal use and reasonable secondary causes. Greco v. Bucciconi Engineering Co., 407 F.2d 87, 89 (3rd Cir. 1969); MacDougall v. Ford Motor Co., 214 Pa.Super. 384, 257 A.2d 676 (1969).

Although the plaintiff did not present overwhelming testimony with respect to the malfunction of the tractor brakes, the record contained sufficient evidence from which the jury could conclude that the plaintiff experienced a brake failure and that such brake failure was the proximate cause of the accident. Clarke testified that, "I saw Dave Williams' taillights go on and I mashed down on my brakes. I found out I didn't have no brakes . . ." (N.T. 1–31.) When later questioned by counsel as to the reason the truck left the highway, Clarke responded, "Because I didn't have no brakes." (N.T. 1–35.) As noted previously, Officer Arrigo testified that he was unable to discern any evidence of skid marks at the scene of the accident.

■ If believed by the jury, testimony that the brakes malfunctioned provides sufficient proof of a defective condition within the meaning of § 402A. There is no evidence in the record indicating that the accident occurred due to the abnormal use of the vehicle. Clarke was traveling at a reasonable speed of 35 miles per hour. Williams, plaintiff's fellow truck driver, who witnessed the accident, testified that Clarke appeared to be in complete control of the tractor-trailer as the vehicle passed and maneuvered back into the driving lane. Other than defendant's argument that the plaintiff failed to make the curve in the highway, no evidence tending to establish the existence of a reasonable secondary cause of the accident was presented. Apparently, Clarke's version of the accident was believed and the jury returned a verdict on the issue of liability in favor of the plaintiff. Under the existing law, the Court is unable to conclude that the plaintiff failed to establish his cause of action. In Burchill v. Kearney-National Corporation, Inc., 468 F.2d 384, 387 (3rd Cir. 1972), the trial judge's decision granting the defendant's motion for a directed verdict, renewed at the end of the trial on the issue of liability, was reversed on appeal. The court therein wrote that, ". . . It was for the trier of the facts to determine the preponderance of the evidence so long as *any* evidence supported the plaintiff's theory of the case . . ." (Emphasis added.)

■ ■ Defendant further contends that plaintiff failed to establish that the brakes were defective at the time the tractor was sold by Brockway. In § 402A cases, it is elementary law that the plaintiff must demonstrate by a preponderance of the evidence that the malfunction was due to a defective condition which existed at the time the product left the hands of the seller. Kaczmarek v. Mesta Machine Company, 463 F.2d 675, 678 (3rd Cir. 1972); Dennis v. Ford Motor Company, 332 F.Supp. 901, 903 (W.D.Pa.1971); Comment (g) of Section 402A of the Restatement of Torts 2d. The test to be applied is whether reasonable and well-balanced minds would be satisfied, from the evidence adduced, that the defective condition existed when the truck was delivered by Brockway to National. Greco v. Bucciconi Engineering Co., *supra*, 407 F.2d at p. 90.

■ The evidence adduced at trial disclosed that the plaintiff had been in possession of the truck for 18 days prior to the accident and had registered between 5,000 and 5,500 miles on the odometer. The Court considers to be minimal the accumulation of 5,000 miles on an 18-day-old tractor that is designed and constructed to haul trailers loaded to capacity for long distances over a con-

siderable period of years. The fact that Clarke drove 5,000 uneventful miles does not support the defendant's theory that the defect could not have existed at the time of sale. The braking apparatus in question here was a relatively enclosed, intricate mechanical system which, except for minor adjustments and routine inspections, remained virtually untouched until the time of the accident. The occurrence of the malfunction within such a short time after the delivery of the tractor by Brockway permits the inference of reasonable and well-balanced minds that a defect existed at the time of sale and the jury so found. See, Bialek v. Pittsburgh Brewing Co., 430 Pa. 176, 242 A.2d 231 (1968).

■ In connection with the above argument, Brockway claimed that Clarke failed to prove that the tractor had not undergone substantial change in the condition in which it was sold at the time of the accident. To support this contention, defendant relies on the testimony of Mr. Harter, the mechanic employed at the New Stanton terminal, who testified that he performed pre-departure inspection on the vehicle including "taking the play out of the brake pads" just prior to Clarke's departure. Section 402A(1)(b) requires that a product "reach the user . . . without substantial change." There is no question that the tractor reached Clarke without substantial change. Defendant's own witnesses testified that the truck was driven from the plant in Courtland, New York, to Philadelphia, Pennsylvania, where minor adjustments ordered by the purchaser were performed and then delivered to National, where the plaintiff received it for the first time. The vehicular inspection occurred after Clarke assumed possession of the tractor. Therefore, defendant's argument on the issue of substantial change in the product is unsound. The question of the mechanic's inspection and adjustment of the brakes is properly one of causation and not of substantial change in the product within the meaning of § 402A. Dennis

v. Ford Motor Company, 471 F.2d 733, 735 (3rd Cir. 1973). The jury found that the accident was proximately caused by a defective condition in the braking system. The Court is not now disposed to disturb this finding.

■ Defendant contends that the trial court erred in refusing to charge the jury on the defense of assumption of the risk. The Court is well aware that under Pennsylvania law assumption of risk is a valid defense to a claim based on strict liability. Elder v. Crawley Book Machinery Company, 441 F.2d 771, 772 (3rd Cir. 1971); Ferraro v. Ford Motor Co., 423 Pa. 324, 223 A.2d 746 (1966). However, at the close of the trial on the issue of liability, the Court was of the opinion that the record did not contain sufficient credible evidence from which the jury could find that the plaintiff assumed the risk.

Clarke testified that when he left the New Stanton terminal the air pressure gauge registered 65 pounds. Although acknowledging that when the air compressor is full the gauge registers 90 pounds, the plaintiff repeatedly stated that the tractor-trailer could be driven safely when the gauge registers 65 or more pounds. Brockway bases its claim that the Court should have instructed the jury regarding assumption of risk on the testimony of David Williams, who testified to the effect that a truck is unsafe and inoperable if the air gauge reads 65 pounds.

■■ Assumption of risk is defined in the law as a voluntary and willing encounter of a risk of danger which is known, appreciated and understood by the plaintiff. To effect the denial of recovery under the doctrine of assumption of risk, the defendant must prove that the plaintiff consciously appreciated the danger and willingly chose to risk such danger. Elder v. Crawley Book Machinery Company, *supra*, 441 F.2d at p. 773; Dorsey v. Yoder Company, 331 F.Supp. 753, 765 (E.D.Pa.1971), aff'd 474 F.2d 1339 (1973).

Thus, Comment (e), § 496C of the Restatement of Torts 2d provides:

". . . assumption of risk is a matter of what the plaintiff knows, understands, and is willing to accept."

Comment (c), § 496D, further provides:

"The standard to be applied is a subjective one, of what the particular plaintiff in fact sees, knows, understands and appreciates. In this it differs from the objective standard which is applied to contributory negligence."

■ The court in *Dorsey* construed the above Restatement provisions and noted that the question is not whether the plaintiff should have realized the risk but whether in fact the plaintiff did realize the danger involved. It is clear from the plaintiff's own testimony that he neither understood nor appreciated any risk of defective brakes when he left the terminal. On cross-examination, plaintiff was asked, "What is the normal pressure that you should have, the required pressure for safe driving?" Clarke responded, "65 [pounds]." (N.T. 1–49.) To a similar question, plaintiff later responded, "It is 65. You can drive on at 65." (N.T. 1–65.)

The instant case is factually distinguishable from Green v. Parisi, 478 F.2d 313 (3rd Cir. 1973), wherein the court held that although the assumption of risk relates to the subjective awareness of a perceptible risk of harm, such subjective awareness and appreciation of risk may be inferred from the surrounding circumstances. The plaintiff in *Green* died from serious burns suffered in an explosion and fire occurring where he struck a match to light a gas burner in the kitchen of his rented home. Plaintiff alleged the explosion was caused by a natural gas leak in a connecting pipe. Defendants contended if the explosion had been caused by a natural gas leak the decedent had assumed the risk of such an occurrence. The record contained no direct evidence as to the decedent's knowledge of the leaking gas. However, evidence presented at trial indicated that other members of the decedent's family were aware of and disturbed by leaking gas for a period of three months. In light of the knowledge and reactions of the plaintiff's own family, coupled with the obvious danger of leaking natural gas in a home, the trial court's decision to instruct on the issue of assumption of risk was affirmed.

■ The plaintiff herein explicitly stated that there was no danger involved in driving the tractor when the air gauge registered 65 pounds. The fact that another driver declared that a reading of 65 pounds rendered the vehicle unsafe is of no consequence in connection with the issue of assumption of risk. The requisite foundation upon which the defense of assumption of risk rests—the subjective awareness and appreciation of the risk of harm—was not established, either by direct or circumstantial evidence.

Another critical factor must be considered here on the question of the propriety of the trial court's refusal to instruct the jury on the assumption of risk. As previously indicated, before departing from the New Stanton terminal, plaintiff received an inspection sticker from the mechanic on duty indicating that the condition of the tractor-trailer, including the brakes, satisfied all the necessary safety and operational requirements of the ICC. The purpose of the inspection is to ensure that all trucks leaving National transfer terminals are mechanically and structurally sound. The receipt of the ICC sticker provided Clarke with reasonable assurance that he could proceed safely in the Brockway vehicle. Under current Pennsylvania law and in light of the facts presented at trial, the trial court properly refused to charge the jury on the issue of assumption of risk.

Finally, the defendant contends that a new trial should be granted on the basis of comments made by plaintiff's counsel regarding a fractured skull sustained by the plaintiff in the accident. The essence of the defendant's argument is that in a bifurcated trial reference to injury or damages is improper during the liability aspect of the case. In the abstract, the defendant's statement of the law is basically correct; however, during the course of a relatively lengthy and complex strict liability case, it is practically impossible to eliminate any and all references to injuries sustained. Factual determinations relative to a witness' perception, credibility, and overall awareness are often inextricably intertwined with the type or extent of injuries sustained. Reference to the extent of injury or the amount of damage should serve as a basis for the granting of a new trial only when the trial court is convinced that the statements (or testimony) are deliberately and purposefully made to inflame the jury or to enhance the probability of a liability verdict.

Such was not the case here. Defense counsel introduced before the jury statements allegedly made by the plaintiff while in the hospital immediately after the accident. The ostensible purpose of introducing such statements was to impeach the in-court testimony of the plaintiff concerning the cause of the accident. It was certainly appropriate, if not incumbent, for plaintiff's counsel to elicit testimony as to the plaintiff's condition at the time the statements were allegedly made. The statements, viewed in context, were neither improper nor prejudicial.

Defendant has raised a series of contentions regarding the Court's charge to the jury. We have reviewed the instructions at considerable length and have found them proper and in complete accordance with existing law. For the above reasons, defendant's motion for judgment notwithstanding the verdict of the jury or, in the alternative, for a new trial will be denied.