132 N.J. Super. 117 (1974)
332 A.2d 607
THOMAS MORACA, PLAINTIFF-APPELLANT, AND EVELYN MORACA, PLAINTIFF,
v.
FORD MOTOR CO., A CORPORATION OF THE STATE OF DELAWARE, AND MERLIN MOTOR CO., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 29, 1973.
Decided February 21, 1974.
*119 Before Judges LEONARD, ALLCORN and CRAHAY.
*120 Mr. Thomas Connery argued the cause for appellant (Messrs. Brown, Connery, Kulp, Wille, Purnell & Greene, attorneys).
Mr. Arthur Montano argued the cause for respondent Ford Motor Co. (Messrs. Kisselman, Deighan, Montano & Summers, attorneys).
A statement in lieu of brief for respondent Merlin Motor Co. was filed by Mr. David G. Eynon (Messrs. Farrell, Eynon and Munyon, attorneys).
The opinion of the court was delivered by LEONARD, P.J.A.D.
This is an automobile products liability case. Following a jury trial, plaintiff Thomas Moraca appeals from a judgment of no cause of action in favor of defendants and against him.
On November 27, 1967 plaintiff, on behalf of a corporation controlled by him, purchased a new 1968 Lincoln Continental 4-door sedan from defendant Merlin Motor Co. (Merlin). On February 5, 1968 the vehicle was returned to Merlin for a 6,000 mile checkup, although the mileage thereon was only 4,370 miles. Plaintiff experienced no mechanical trouble from the time he took delivery of the automobile until May 28, 1968, the day of the accident here involved. At that time the car had been driven approximately 11,000 miles.
Approximately 11 A.M. on the day in question, plaintiff left his place of business in Cherry Hill, New Jersey, with the intention of driving to Ocean City, Maryland, a distance of about 150 miles. He first stopped at a gas station immediately adjacent to his office. The station attendant, finding that the power steering fluid was very low and that no fluid showed on the dip-stick, added approximately one-third of a quart of transmission oil to the power-steering reservoir. Plaintiff then proceeded south on the New Jersey Turnpike, crossed into Delaware and continued in the same direction on Route 13.
*121 At the scene of the accident, Route 13 curves gradually to the right. When plaintiff entered this curve, he estimated he was traveling 45 miles per hour in the right lane of the dual highway. The speed limit at the location was 60 M.P.H. It was raining rather heavily at the time.
Just after entering the curve, plaintiff heard a noise, which he described as a "gink" in the front end of the vehicle. Immediately following, the car began to slide to the right. The front wheels felt as if they were locked and the steering wheel would not respond to plaintiff's efforts. It would not turn even though plaintiff exerted force with both hands. The car traversed the 12 foot right shoulder and into a contiguous field, where it continued in a side-slide down the highway for about 42 feet. It struck a tree located 3 feet from the outside edge of the shoulder. The front portion of the vehicle came to rest against the tree and the remaining part about 30 feet away.
Plaintiff testified that he took his foot off the accelerator when the slide started and did not thereafter increase his speed. He also stated that he did not think he had his foot on the brake as he was attempting to turn the locked steering wheel.
As a result of the accident plaintiff suffered serious personal injuries.
Sometime after the accident, the two sections of the Continental were returned to this state and following notice to both defendants, the power steering system was disassembled in the presence of representatives and experts of all parties.
At trial plaintiff produced two experts. They substantially agreed in their testimony that there existed two manufacturing defects in the power steering sector shaft of plaintiff's automobile. The first was a rough area along one side of the bearing surface on the lower portion of the shaft, where it would come into contact with the seal. The second was that the sector shaft itself was bent. Both opined that the first would abrade the seal, causing it to eventually fail, resulting in loss of power steering fluid. The second would *122 cause the shaft to rotate in an eccentric fashion, in turn causing the lip of the seal to be stretched so that it would allow power steering fluid to spurt out. Additionally, the first expert testified that as a result of the loss of oil level, the power steering unit would instantaneously lock, making it impossible for a person of ordinary strength to control it. It was his further opinion that the two described defects, with the accompanying loss of oil, were the cause of the instant malfunction, and of the resultant accident.
Defendant in turn offered three experts who contradicted plaintiff's witnesses. They denied the loss or leakage of power steering fluid or damage to the seals. In their opinion the bend in the sector shaft was due to the accident impact.
At the close of the trial, plaintiff submitted to the court the following written requests to charge:
Nor is the plaintiff required to establish the specific defect that existed in the product. Rather, in order to recover for breach of warranty, the plaintiff must present evidence from which it is reasonable to infer or conclude that more probably than not, the harmful event ensued from some defect in the product, whether the defect is identifiable or not, and that the defect arose out of the design or manufacture of the product or while it was in the control of the defendant, and that the defective product proximately caused injury or damage to the plaintiff.
A breach of warranty may be established where the total effect of the circumstances shown from purchase to accident is adequate to raise an inference that the product was defective and that such condition was causally related to the mishap that occurred.
Both were denied on the ground that they were "included" in the main charge.
The case was submitted to the jury on the basis of four special interrogatories, the last pertaining to damages. The pertinent three follow:
1. Do you find any defect in the automobile operated by plaintiff making it unfit for its intended use, which was a proximate cause of the circumstances resulting in plaintiff's injuries?
If your answer is "NO" to question No. 1, you need not answer *123 question No. 2. If your answer is "YES" then answer question No. 2.
2. Did such defect exist at the time the automobile left the control of the manufacturer, Ford Motor Co.?
3. Do you find the plaintiff, Thomas Moraca, guilty of negligence which constituted a substantial factor in contributing to the happening of the circumstances, resulting in plaintiff's injuries? If you answer "YES" to questions No. 1 and No. 2, and "NO" to question No. 3, then answer No. 4. If your answer is "NO" to question No. 1 or "YES" to question No. 3, you need not answer question No. 4.
After a period of deliberation, the jury returned and queried, "If the first question is answered `no' but we also answer question #3 `no' can Ford circumstantially be held responsible and Mr. Moraca awarded damages?".
Plaintiff's counsel renewed his request for a specific charge on "circumstantial evidence." This was denied and counsel excepted. Thereafter, the jury returned, answering special interrogatories #1 and #3 in the negative. The court thereupon entered a verdict of no cause of action in favor of both defendants and against the plaintiff.
In this appeal plaintiff contends that since in a product liability action, circumstantial evidence of a malfunction or defect is sufficient to support a finding for an injured plaintiff, the trial court erred in twice refusing to charge his two requests.
Defendants, on the other hand, although they do not deny that liability in this type of a case can be supported by circumstantial evidence of a defect, contend that plaintiff has the burden of proving that the product was defective as alleged, and that the defect was a proximate cause of the malfunction and resultant accident. They further assert that the resolution of these issues was for the jury and in the instant case the jury resolved them against plaintiffs. Finally, they claim the charge as a whole was sufficiently broad to include "a fundamental equivalent" to a charge on circumstantial evidence.
In this State, in the application of the doctrine of strict liability in tort, evidence of some specific defect or *124 design, manufacture or workmanship as the cause of a malfunction resulting in the injury is not an essential of plaintiff's burden of proof. The "total effect of the circumstances shown from purchase to accident is adequate to raise an inference that the car was defective and that such condition was causally related to the mishap." Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 409 (1960). Although the existence of a defect cannot be found on the basis of mere conjecture or guess, yet it is not necessary to exclude every other possible cause which the ingenuity of counsel might suggest. The finding of strict liability may be circumstantially supportable. Id. at 411. Thus "whenever the facts permit an inference that the harmful event ensued from some defect (whether identifiable or not) in the product, the issue of liability is for the jury." Sabloff v. Yamaha Motor Co., Ltd., 59 N.J. 365, 366 (1971), affirming 113 N.J. Super. 279 (App. Div. 1971). See also Rose v. Port of New York Authority, 61 N.J. 129, 136-37 (1972); Corbin v. Camden Coca-Cola Bottling Co., 60 N.J. 425, 435-36 (1972). cf. M. Dietz & Sons, Inc. v. Miller, 43 N.J. Super. 334 (App. Div. 1957).
Here, the facts testified to by plaintiff permitted such an inference  that the malfunction in the steering apparatus of his automobile was causally related to some defect of design, manufacture or workmanship therein. His testimony was corroborated in part by State Policeman Bethard, who testified to the erratic path of travel of the vehicle. Additionally, two of defendants' experts conceded that if the power steering system did lose oil, it would pick up air and there would be an audible noise. One expert described it as similar to the noise made by "marbles running down a pipe." This lent support to plaintiff's testimony of hearing a "gink" immediately before his steering wheel locked.
By reason of the existing factual background and especially in view of the jury's request of whether defendant Ford could "circumstantially be held responsible" for plaintiff's damages, we conclude that the trial court should have *125 charged plaintiff's two requests. The fact that his experts testified to a specific or identifiable defect did not obviate the necessity of so doing. Sabloff v. Yamaha Motor Co., Ltd., supra, 59 N.J. at 366.
Defendants' contention that the charge as given was sufficiently broad and included "a fundamental equivalent" to the requested charge on circumstantial evidence is without merit. Although the judge, in his charge and in interrogatory #1, referred several times to "any defect" or to a defect generally, he also made several specific references to plaintiff's "contended" for or "claimed" defect. Upon a reading of the entire charge, we can only conclude that the issue of liability was submitted to the jury predicated solely upon the specific defects asserted by plaintiff's experts. This conclusion finds clear support in the colloquy between the Court and plaintiff's counsel, at the time the latter objected to the failure to charge his two requests. The judge noted that he came "away from this whole trial with the theory that the plaintiff apparently pinpointed the two possible causes for the car's failure at this given point." He further added that the case was not tried on any theory that "there must have been some other reason which caused the car to do it, which we can't explain at all. This would be introducing something entirely new in the theory of the case."
Upon the totality of the existing circumstances, we hold that the trial court's failure to charge plaintiff's two requests deprived him of a substantial right, thus mandating a reversal and a new trial as to liability against both defendants. Leone v. Rutt's Hut, Inc., 55 N.J. Super. 485, 492-493 (App. Div. 1959); Grammas v. Colasurdo, 48 N.J. Super. 543, 552 (App. Div. 1958); see R. 2:10-2.
Our dissenting colleague principally bottoms his opinion upon the fact that plaintiff's automobile had been purchased six months before the accident and had been driven approximately 11,000 miles in the interim. He would legally limit the application of the doctrines of Henningsen, supra and Sabloff, supra to "newly manufactured" and "virtually unused" *126 vehicles and in all other situations he would eliminate a finding of strict liability supported solely by circumstantial evidence.
Preliminarily, we note that this specific point was not raised by defendants at trial or on this appeal. In any event, we do not perceive the concept noticed in the dissent to be tenable. To the contrary, it is our opinion that prolonged uneventful use prior to the injurious occurrence does not legally bar the raising of an inference from the totality of the existing circumstances that the vehicle was defective and that such defect was causally related to the mishap, nor does it mandate that a plaintiff must identify a specific defect in order to establish a jury question of strict liability. Rather, we feel that the age of and the number of miles traversed by the vehicle are relevant factors to be considered by the jury, together with all other existing circumstances, in determining whether a manufacturer's defect existed and if it did, whether it was the proximate cause of the vehicle's malfunction. See Tucker v. Unit Crane & Shovel Corp., 256 Or. 318, 473 P.2d 862 (Ore. Sup. Ct. 1970); Hawkeye-Security Insurance Co. v. Ford Motor Co., 174 N.W.2d 672, 679-681 (Iowa Sup. Ct. 1970).
The dissenting opinion appears to place an additional and greater burden upon plaintiff of eliminating "wear and tear from normal operation" and the "mere passage of time" as possible causes of the defect. However, Henningsen, supra, at 411, makes it clear that it is not necessary for plaintiff to "exclude every other possible cause."
Here, the automobile was purchased new, not used, just six months before the accident, and the record is devoid of any proof that during that period it was improperly maintained or otherwise mishandled by plaintiff. Nor can it be said that it was driven "beyond its reasonably expected life span." Thus, Jakubowski v. Minnesota Mining and Manufacturing, 42 N.J. 177 (1964) and Courtois v. General Motors Corp., 37 N.J. 525 (1962), cited in the dissent, are inapposite.
*127 Reversed and remanded in accordance herewith.
ALLCORN, J.A.D. (dissenting):
In this action of strict liability in tort, the plaintiffs sought damages arising from a one-car collision, assertedly due to a malfunction of the automobile, in turn the result of an alleged defect of design, manufacture or workmanship.
At the trial, the plaintiffs produced evidence of two specific defective conditions related to the power steering sector shaft of the automobile, which evidence was controverted by witnesses produced on behalf of the defendant. The case was submitted to the jury on a charge which, it is said, limited its consideration to the "claimed defect"  i.e., the specific defects which the plaintiffs' experts testified as the causes of the malfunction resulting in the accident. The jury returned a verdict in favor of the defendants. The majority of the court reverses on the ground that the plaintiffs were not obligated to prove one or more specific, identifiable defects as the cause of the malfunction in order to recover; but, rather, that the mere showing of "the circumstances ... from purchase to accident is adequate to raise an inference that the car was defective and that such condition was causally related to the mishap", quoting from Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 409 (1960).
As stated by the writer in a dissent filed in the case of Realmuto v. Straub Motors, Inc., (A-1034-72, filed December 11, 1973):
* * * It is true that, in the application of said doctrine [of strict liability in tort] in New Jersey and elsewhere, it is held that evidence of some specific defect of design, manufacturer or workmanship as the cause of the malfunction resulting in the injury, is not an essential of the plaintiff's burden of proof. The "total effect of the cricumstances shown from purchase to accident is adequate to raise an inference that the car was defective and that such condition was causally related to the mishap." Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 409 (1960). Otherwise stated, "whenever the facts permit an inference that the harmful event ensued from some defect (whether identifiable or not) in the product, the issue of liability is for the jury ..." Sabloff v. Yamaha Motor Co., Ltd., 59 N.J. *128 365, 366 (1971), affirming 113 N.J. Super. 279 (App. Div. 1971). Compare, M. Dietz & Sons, Inc. v. Miller, 43 N.J. Super. 334 (App. Div. 1957).
Both Henningsen and Sabloff, however, dealt with newly manufactured and virtually unused vehicles. Thus, the Henningsen automobile was purchased new on May 9, 1955, and the malfunction and resulting accident occurred on May 19, 1955 (just ten days later), when the car had been driven less than 500 miles. The motorcycle involved in Sabloff had been operated only 56 miles at the time of its sale, and the malfunction and accident occurred two days succeeding the sale, after it had been driven little more than an additional 50 miles. In the case of the malfunction of a newly manufactured product, where the lapse of time and the amount of use between the occasion of its purchase and the occurrence of the mechanical failure is minimal, the inference that the malfunction was the result of some defect of design, manufacture, or workmanship in the product itself is not only reasonable but virtually inescapable, simply on the showing of such circumstances. And, on such a showing, evidence of some specific, identifiable defect as the cause of the malfunction proximately resulting in the accident and injury, is not necessary. See, Annotation, "Strict Products Liability  Proof of Defect," 51 A.L.R.3d 8 (1973).
In the case presently before the court, however, the automobile had been driven for a period of approximately six months and had accumulated some 11,000 miles. It was no longer a new automobile. And where, as here, the automobile is not new and the malfunction occurs after a substantial period of use and lapse of time, in order to impose liability upon manufacturer and retailer under the doctrine of strict liability in tort the proof requirement to establish defect and causation necessarily must be greater than in the case of a new and virtually unused vehicle. This for the obvious reason that automobiles deteriorate as the result of wear and tear from normal operation, misuse, poor or faulty maintenance, and even the mere passage of time. Each takes its toll of the various component parts of the vehicle, and affects the entire machine as a functioning whole.
Thus, after some 11,000 miles and six months of operation, an automobile may very well develop a defect as a result of some cause other than improper design, manufacture or workmanship on the part of the manufacturer. Unless *129 this very real possibility is eliminated or rendered improbable by affirmative evidence of a specific, identifiable defect of design, manufacture or workmanship in the automobile as originally made and delivered to the purchaser, the plaintiff has not established his cause of action against the manufacturer or dealer under the doctrine of strict liability in tort. As so aptly stated in Jakubowski v. Minnesota Mining and Manufacturing, 42 N.J. 177, 186 (1964):
Thus, we have here four possible causes of the break, viz.: manufacturing flaw, inadequate design, misuse or overuse. The plaintiff has introduced no evidence which indicates that one of these causes is more probable than the others. In order to recover, he must present evidence from which it is reasonable to infer that more probably than not the cause of the break was one for which the defendant is responsible. * * *
See also, Courtois v. General Motors Corp., 37 N.J. 525 (1962); Annotation, "Strict Products Liability  Proof of Defect", 51 A.L.R.3d 8 (1973).
In view of the foregoing, it follows that the mere showing of a mechanical failure of an automobile following upon 11,000 miles and six months of operation after its purchase new, is not sufficient to sustain a cause of action against the manufacturer and the dealer in an action of strict liability in tort for injury resulting therefrom.
I would affirm the judgment of the Law Division.