630 P.2d 656

Alva GARRETT, individually and as Guardian ad Litem for Jack Garrett and Marilyn Garrett, minor children; Eleanor Martin and John Garrett, all children and heirs at law of Edith Garrett, deceased, and John Garrett, individually, Plaintiffs,

v.

Laurin William NOBLES and L. H. Nobles, individually, and Laurin William Nobles and L. H. Nobles dba P & L Transportation Co.; Boise International, Inc., a Delaware Corporation; International Harvester Company, a Delaware Corporation; Cummins Intermountain Idaho, Inc., an Idaho Corporation; and Cummins Engineering Co., Inc., a corporation, Defendants.

Laurin William NOBLES and L. H. Nobles, individually, and L. H. Nobles dba P & L Transportation Co., Cross-Claimants, Appellants and Cross-Respondents,

and

Patsy Nobles, Plaintiff in Intervention, Appellant and Cross-Respondent,

v.

BOISE INTERNATIONAL INC., a Delaware Corporation, Cross-Defendant and Defendant in Intervention, Respondent and Cross-Appellant,

and

International Harvester Company, a Delaware Corporation; Cummins Intermountain Idaho, Inc., an Idaho Corporation; and Cummins Engineering Company, Inc., a corporation, Cross-Defendants and Defendants in Intervention, Respondents.

BOISE INTERNATIONAL, INC., a Delaware Corporation, Cross-Claimant,

v.

CUMMINS INTERMOUNTAIN IDAHO, INC., an Idaho Corporation; and Laurin William Nobles and L. H. Nobles, individually and dba P & L Transportation Co., Cross-Defendants.

INTERNATIONAL HARVESTER COMPANY, a Delaware Corporation, Third-Party Plaintiff,

v.

Laurin William NOBLES and L. H. Nobles, individually and dba P & L Transportation Co., Third-Party Defendants.

No. 12840.

Supreme Court of Idaho.

June 24, 1981.

David L. Whitney, of Alexanderson, Davis & Rainey, Caldwell; and William F. Schroeder, of Schroeder & Hutchens, Vale, Or., for appellants Laurin William Nobles and L. H. Nobles, individually, and Laurin William Nobles and L. H. Nobles, dba P & L Transportation.

Dean E. Miller, of Gigray, Miller, Downen & Weston, Caldwell, for appellant, Patsy Nobles.

Richard Alan Riley, of Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, for respondent and cross-appellant, Boise International, Inc.

Richard C. Fields and Donald J. Farley, of Moffatt, Thomas, Barrett & Blanton, Boise, for respondent, International Harvester Co.

Brian Kenneth Julian, of Quane, Smith, Howard & Hull, Boise, for respondent, Cummins Intermountain Idaho.

SHEPARD, Justice.

This is an appeal from a judgment entered following a jury verdict in favor of certain product liability defendants. The action arose from an automobile-truck collision which resulted in the death of one of

the automobile passengers and in injuries to the automobile driver and other passengers.

The action below originated as one for wrongful death and personal injuries against the truck owner, L. H. Nobles, and the truck driver, Bill Nobles. The Nobles filed a third party complaint against the seller and manufacturers of the truck on alternate theories of negligence, breach of warranty and strict liability. The action on behalf of the Garretts was settled by the Nobles prior to trial and the cause proceeded as an action by the Nobles against the third party product defendants for contribution to the Garrett settlement, for damages for repair and loss of use of the truck and also for personal injuries to Patsy Nobles, a passenger in the truck. As aforesaid, the jury returned a verdict in favor of the third party product defendants and judgment was entered thereon. We affirm.

In early December, 1974, L. H. Nobles purchased a new 1975 diesel truck from Boise International. It was agreed that a Jacobs engine brake (jake brake) would be installed in the truck prior to delivery. Cummins Intermountain installed that brake using parts furnished by Boise International.

On December 13th, Bill Nobles, the son of L. H. Nobles and an employee of the Nobles' business, took delivery of the truck. Later that day, at approximately 6:30 p. m., Bill Nobles with his wife Patsy as a passenger drove the truck down Highway 30 toward its intersection with Highway 44, at which point a stop sign required Nobles to stop before entering the intersection. Nobles testified that as he approached the intersection he lifted his foot from the power pedal and applied the brakes, but that the engine power continued. He further testified that he kicked at the pedal but that the power persisted, the brakes locked and the truck began to skid. The truck continued into the intersection where it collided with the Garrett vehicle.

At the scene following the accident, Bill Nobles variously stated that he had "hit a slick spot or something" and later that the "damn throttle stuck." It was dark and cold at the time of the accident, but the pavement was dry. No traffic citations were issued.

At trial, the Nobles offered extensive expert testimony that a warranty seal on the fuel pump had impeded the activating lever of the jake brake which had resulted in the fuel pump lever being held in an open position, and that the absence of direct linkage from the accelerator pedal to the fuel pump had prevented the driver from kicking loose the impediment. The product defendants, on the other hand, offered evidence that the activating lever of the jake brake was not impeded and that therefore the throttle had not in fact stuck, but instead that the accident was caused by factors unrelated to the allegedly defective truck.

Following trial, the court submitted a 25 question special verdict form to the jury of which only question No. 1 was answered.

"Do you find from a preponderance of the evidence that the throttle in the Nobles truck stuck prior to the impact with the Garrett vehicle?

"Answer: Yes—3. No—9."

The language following question No. 1 instructed the jury as follows:

"If your answer to this question is 'yes', proceed to answer Question No. 2. If your answer to this question is 'no', simply sign the verdict form and inform the bailiff that you have concluded your deliberations."

The trial court entered judgment for the product defendants, the Nobles moved for a new trial, the motion was denied and the Nobles appealed. Boise International cross-appealed arguing that the court erred in rejecting its claim against L. H. Nobles on the theory of negligent entrustment, on excluding evidence of Bill Nobles' driving record and in failing to award attorney fees.

We deem the principal issue on appeal to be the Nobles' assertion that the court's refusal to give Nobles' requested specific defect instruction,[1] together with the lan-

---

1. "To prove a defective condition it is not necessary to prove a specific defect. Nor is it

necessary to prove a defective condition by direct evidence; it may also be proved by cir-

guage of special verdict question No. 1, required the Nobles to prove a specific defect contrary to the established law which only requires proof of a general malfunction. We disagree with Nobles' assertion.

"[W]hether a cause of action is based on warranty, negligence or strict products liability, plaintiff has the burden of alleging and proving that 1) he was injured by the product; 2) the injury was the result of a defective or unsafe product; and 3) the defect existed when the product left the control of the manufacturer." *Farmer v. International Harvester Company*, 97 Idaho 742, 746–47, 553 P.2d 1306, 1310–11 (1976); *Henderson v. Cominco American, Inc.*, 95 Idaho 690, 696, 518 P.2d 873, 879 (1973).

In *Farmer, supra*, this Court, in a products liability case involving an alleged malfunctioning truck, discussed the meaning of the concept of "defect" and clarified the plaintiff's burden of establishing the existence of a defective product.

In *Farmer, supra*, we held that a plaintiff need not prove a specific defect in order to carry his burden of proof. *Id.*, 97 Idaho at 747, 553 P.2d at 1311. *Accord, Stewart v. Ford Motor Company*, 553 F.2d 130 (D.C. Cir.1977); *Chestnut v. Ford Motor Company*, 445 F.2d 967 (4th Cir. 1971); *Kridler v. Ford Motor Company*, 422 F.2d 1182 (3rd Cir. 1970); *Clarke v. General Motors Corporation*, 430 F.Supp. 1124 (E.D.Pa.1977); *Dennis v. Ford Motor Company*, 332 F.Supp. 901 (W.D.Pa.1971); *Moraca v. Ford Motor Company*, 132 N.J.Super. 117, 332 A.2d 607 (1974); *Tigert v. Admiral Corporation*, 612 P.2d 1381 (Okl.Ct.App.1980); *Bombardi v. Pochel's Appliance and TV Company*, 9 Wash.App. 797, 515 P.2d 540 (1973). Instead we said that a prima facie case of product liability may be proved by direct or circumstantial evidence of a malfunction of the product and the absence of evidence of abnormal use and reasonable secondary causes which would eliminate the defend-

ant's liability. *Farmer, supra*, 97 Idaho at 747, 553 P.2d at 1311. *Accord, Stewart, supra; Clarke v. General Motors, supra; Clarke v. Brockway Motor Trucks*, 372 F.Supp. 1342 (E.D.Pa.1974); *Greco v. Bucciconi Engineering Company*, 283 F.Supp. 978 (W.D.Pa.1967), *aff'd* 407 F.2d 87 (3rd Cir. 1969); *Brandenburger v. Toyota Motor Sales, U.S.A., Inc.*, 162 Mont. 506, 513 P.2d 268 (1973).

We further noted that "[p]roof of malfunction is circumstantial evidence of a defect in a product since a product will not ordinarily malfunction within the reasonable contemplation of a consumer in the absence of a defect." *Farmer, supra*, 97 Idaho at 748, 553 P.2d at 1312. *Accord, Sabloff v. Yamaha Motor Co., Ltd.*, 113 N.J.Super. 279, 273 A.2d 606 (1971), *aff'd* 59 N.J. 365, 283 A.2d 321 (N.J.1971); *Darryl v. Ford Motor Company*, 440 S.W.2d 630 (Tex.1969). Testimony of the user or operator of the product as to the circumstances of the event complained of is sufficient to establish the alleged malfunction. *Farmer, supra*, 97 Idaho at 748, 553 P.2d at 1312. *Accord, Stewart, supra; Clarke v. Brockway Motor Trucks, supra; Dennis, supra; Greco, supra.*

In the instant case, it is the Nobles' contention that requiring them to prove that the accident resulted from a "stuck throttle" placed upon them the burden of proving a specific defect as opposed to a general malfunction. We disagree.

Our review of the pleadings and the proceedings at trial indicate that the cause was tried by the Nobles on the basis that the general malfunction was a stuck throttle and the specific defect was the warranty seal impeding closure of the fuel pump throttle and the absence of direct linkage between the fuel pump and the accelerator pedal.

The Nobles' third party complaint alleged that the truck was defective in the following particulars:

cumstantial evidence from which you, weighing all of the evidence, do infer that in the normal course of human experience an injury would not occur at this point in the product's life span

had there not been a defect in the product at the time of its sale to the user." Record, vol. 7, at 300; vol. 8, at 529.

"(a) The 'Warranty seal' affixed to the fuel pump and throttle housing interrupted the movement of the micro-switch activating lever of the Jacobs Engine Brake resulting in the inability of the fuel pump throttle to close when the accelerator pedal was released;

"(b) The accelerator pedal was not attached to the linkage activating the fuel pump, and said defects individually or in combination could and on December 13, 1974, did prevent a termination of engine power when the accelerator pedal was released by the driver of The Truck."

During trial, in response to a motion to dismiss, the Nobles' counsel made the following oral argument to the trial court:

"MR. SCHROEDER: Your Honor, *before I point to the specific evidence involved,* I would like to make two observations that I think are significant to a ruling I think the court may make. The first thing is that—and now referring to ourself as the Plaintiffs—it is not necessary under Idaho law or any law adopting 402–A, the doctrine of strict products liability, for the Plaintiff to show a specific defect. It is only necessary to show that a happening occurred that could be attributable to a defect; and we submit—

"THE COURT: What defects are you talking about?

"MR. SCHROEDER: A defect, *we don't have to prove a specific defect. A stuck throttle, why the throttle stuck is not something we have to prove.* Now, this is the law of Idaho and it's very clear in the law of Idaho in just so many words, a specific defect is not required in the proof for a Plaintiff to get by a motion for a nonsuit.

"Now, Nobles testimony without—

"THE COURT: Without any proven defect in the Cummins engine?

"MR. SCHROEDER: In the truck as it is; and International Harvester is in the chain of manufacturers of the truck and that's—

"THE COURT: What is the defect in the truck you are talking about? You have got to prove a defect in the truck.

"MR. SCHROEDER: Yes, a defect in the truck, but *we don't have to prove what the specific defect is;* and International Harvester is in the chain of possession. *Nobles, his testimony alone, testifying that a stuck—that the throttle stuck is sufficient to trigger the application of 402–A. Now, I just want to make that general observation first, and that's clear in the law of Idaho."* Record, vol. 3, at 932–33. *(Emphasis added.)*

Our conclusion that a stuck throttle constituted a general malfunction and not a specific defect is consistent with this and other jurisdictions' implicit characterization of specific defects and general malfunctions. *See Farmer, supra,* wherein a specific defect in components of a gear box caused the general malfunction, *i. e.,* the loss of steering control; *Moraco, supra,* wherein specific defects in the bearings and the sector shaft resulted in loss of power steering fluid causing the general malfunction, *i.e.,* the loss of steering control; *Chestnut, supra,* wherein specific defects in the solenoid coil and terminals caused the general malfunction, *i. e.,* the headlight lids of a car with a headlight closure system closed while driving at night. *See also Kridler, supra; Stewart, supra; Dennis, supra.*

In those cases loss of steering control, brake failure and malfunctioning headlight lids were implicitly categorized as general malfunctions and the technical mechanical explanations why those malfunctions occurred were categorized as the specific defects which the plaintiffs were not required to prove. In *Chestnut, supra,* the opinion explicitly noted that the plaintiff "was not required to prove a specific defect, *i. e.,* precisely why there was a malfunction of the headlights." *Id.* at 970. Although the Nobles contend that here the general malfunction was the unrestrainable engine and the specific defect was the stuck throttle, our review of the record indicates that in the context of the trial, an unrestrainable engine was treated as the semantic equivalent of a stuck throttle.

The Nobles also assert that even if a stuck throttle is not a specific defect, fail-

ure to instruct the jury that a specific defect need not be proven was nevertheless reversible error. Again we disagree.

■ The instructions of the court accurately instructed the jury on the law relative to negligence, warranty and strict liability. Those instructions, when read together, informed the jury that in order to recover on any of those theories, the Nobles were required to establish, among other things, that the product was defective. The jury was instructed that the defectiveness of the product could be proved by either direct or circumstantial evidence and as aforesaid the instructions did not require the Nobles to prove the specifically alleged defects, but only a general malfunction. When viewed as a whole, the trial court's instructions correctly stated the issues and the relevant law. *See, e. g., Annau v. Schutte*, 96 Idaho 704, 535 P.2d 1095 (1975); *Davis v. Bushnell*, 93 Idaho 528, 465 P.2d 652 (1970). Where, as here, the substance of a party's proposed instructions are adequately covered elsewhere, the trial court does not err in refusing the proposed instruction. *Mann v. Gonzales*, 100 Idaho 769, 605 P.2d 947 (1980); *Owen v. Burcham*, 100 Idaho 441, 599 P.2d 1012 (1979); *Nora v. Safeco Insurance Co.*, 99 Idaho 60, 577 P.2d 347 (1978).

■ Nobles also argues that question No. 1 of the special verdict form was erroneous in that it required the jury to find an evidentiary as opposed to an ultimate fact. They assert that whether the throttle stuck was an evidentiary fact, whether the truck was defective was the ultimate fact and that questions to the jury should relate only to ultimate facts. Although Nobles objected to the special verdict form on a number of grounds, they did not, prior to the submission to the jury, object on the basis that question No. 1 constituted an evidentiary finding. An appellate court should not consider an alleged defect in the questions put to a jury in the absence of an objection. 9 Wright and Miller, Federal Practice and Procedure § 2508, p. 508 (1971). *See Martin v. United Fruit Co.*, 272 F.2d 347 (2d Cir. 1959); *Butterfield v. Pepsi-Cola Bottling*

*Co. of Wichita*, 210 Kan. 123, 499 P.2d 539 (1972); *Pedersen v. Pete Wilson Realty, Inc.*, 256 Or. 622, 475 P.2d 413 (1970). Assuming *arguendo* that the Nobles' objections were broad enough to cover the evidentiary-ultimate fact distinction, we find no error in the language of question No. 1. I.R.C.P. 49(a), which is identical to the federal rule, gives the trial court broad discretion in determining the nature, scope and form of questions put to the jury. *See* 9 Wright and Miller, *supra*, § 2506, p. 498.

" 'Some courts have said that only ultimate fact questions should be submitted to the jury for determination by special verdict, and that evidentiary issues should not be submitted. Obviously it is undesirable to submit numerous evidentiary issues which merely restate, elaborate, or confirm the jury's decision of the controlling issues, but it must be recognized that the distinction between ultimate issues and evidentiary issues is one of degree only, and that little is gained by seeking to make fine discriminations between one kind of issue and the other.' " *Bott v. Wendler*, 203 Kan. 212, 453 P.2d 100, 107 (1969), quoting from 2B Barron & Holtzoff, Federal Practice (Rules Ed.) § 1055, p. 341; *see* 9 Wright and Miller, *supra*, § 2506, pp. 500–03.

■ In the instant case the critical issue was whether the throttle stuck prior to impact. Although that determination might technically be an evidentiary fact, we believe the issue was fairly put before the jury. We find no abuse of discretion by the trial court in so placing the issue before the jury.

■ The Nobles next contend that the special verdict form erroneously disclosed to the jury the effect of its findings because the language following question No. 1 instructed the jury that if they answered that question negatively they need not answer any of the remaining questions. This contention is answered in *Seppi v. Betty*, 99 Idaho 186, 579 P.2d 683 (1978); *Holland v. Peterson*, 95 Idaho 728, 518 P.2d 1190 (1974); *Cassia Creek Reservoir Co. v. Harper*, 91 Idaho 488, 426 P.2d 209 (1967). In

addition, that language merely instructed the jury on how to proceed logically through the verdict form. We hold that such was not error and certainly not prejudicial error. The Nobles failed to prove the existence of the claimed malfunction and even if the jury had proceeded through the remainder of the verdict form, the result could not have changed.

We have considered the Nobles' remaining assignments of error relating to certain other refused instructions and verdict form objections. In view of the conclusions of this Court on the principal questions presented, discussion of those remaining assignments of error is not warranted, as they reflect no errors of a prejudicial nature.

As to the questions raised on cross-appeal, our affirmance renders discussion of those issues unnecessary, except as to cross-appellant's contention that it was entitled to attorney fees below. We find no abuse of discretion in the trial court's denial of attorney fees.

The judgment of the trial court is affirmed. Costs to respondents.

BAKES, C. J., and McFADDEN and DONALDSON, JJ., concur.

BISTLINE, Justice, dissenting.

The controlling issue in this case is whether the trial court erred in refusing to instruct the jury that a specific defect need not be proven and in giving the jury question no. 1 in the special verdict form.[1] To my mind, the combination of these two factors constitutes reversible error.

In *Farmer v. International Harvester Co.,* 97 Idaho 742, 553 P.2d 1306 (1976), this Court held "that a plaintiff need not prove a specific defect to carry his burden of proof." *Id.* at 747, 553 P.2d at 1311. The Court further stated:

---

1. The question was:
    "Do you find from a preponderance of the evidence that the throttle in the Nobles truck stuck prior to the impact with the Garrett vehicle?"
    Plaintiff's refused requested instruction read:
    "To prove a defective condition it is not necessary to prove a specific defect. Nor is it necessary to prove a defective condition by

"A *prima facie* case may be proved by direct *or circumstantial evidence of a malfunction* of the product and the absence of evidence of abnormal use and the absence of evidence of reasonable secondary causes which would eliminate liability of the defendant. . . .

. . . .

*Testimony of the* user or *operator* of the product *as to the circumstances* of the event *is sufficient to establish malfunction. . . .*

. . . .

In summary the evidence need only be such that it can be said:

"'The product itself must be of a type permitting the jury, after weighing all the evidence * * * to infer that in the normal course of human experience an injury would not have occurred at this point in the product's life span *had there not been a defect attributable to the manufacturer.*' *Scanlon v. General Motors Corp.,* supra [65 N.J. 582] 326 A.2d [673] at 679." 97 Idaho at 747–49, 553 P.2d at 1311–13 (emphasis added).

Under the rule in *Farmer,* a plaintiff need only show that the accident would not have occurred had there not been *a defect* attributable to the manufacturer. The plaintiff need not show what the defect was; he need only relate the events of the accident, and this can provide sufficient circumstantial evidence so that the jury is then free to believe that the accident would not have occurred had there been no defect.

In the present case, however, the trial court imposed on Nobles the burden of proving that the throttle stuck. Throttle is defined in Funk & Wagnall's New Standard Dictionary of the English Language (1935) as "a valve in the supply-pipe of an engine

---

direct evidence; it may also be proved by circumstantial evidence from which you, weighing all of the evidence, do infer that in the normal course of human experience an injury would not occur at this point in the product's life span had there not been a defect in the product at the time of its sale to the user." Record, vol. 7, at 300; vol. 8 at 529.

for controlling the flow of the working-fluid: usually operated by hand-wheel or lever." I cannot agree that requiring Nobles to prove the throttle stuck is in conformity with the holding in *Farmer*. Nobles' evidence at trial was that he could not stop the truck because the engine was racing uncontrolled which he also expressed in terms of the throttle being stuck. Nobles, a truck driver, felt the engine was racing uncontrolled because the throttle was stuck. Nobles further attempted to demonstrate why the engine was racing uncontrolled, contending that the throttle *was* stuck, and that it was stuck because of a warranty seal impeding closure of the fuel pump throttle and the absence of direct linkage between the fuel pump and the accelerator pedal. For Nobles to prevail it was not necessary that the jury agree with Nobles' theories as to the cause of the throttle sticking; nor did the jury have to agree and find that the stuck throttle caused the runaway engine. Nobles was merely attempting to show that the specific defect was a stuck throttle, and even more specifically, why the throttle was stuck. The proper jury question, however, was not whether the throttle was stuck, but whether the accident " 'would not have occurred at this point in the product's life span had there not been a defect attributable to the manufacturer.' " 97 Idaho at 749, 553 P.2d at 1313.

A similar question arose in *Moraca v. Ford Motor Co.*, 132 N.J.Super. 117, 332 A.2d 607 (1974) *aff'd*, 66 N.J. 454, 336 A.2d 599 (1975). In that case, plaintiff requested that the court give the following instructions:

"Nor is the plaintiff required to establish the specific defect that existed in the product. Rather, in order to recover for breach of warranty, the plaintiff must present evidence from which it is reasonable to infer or conclude that more probably than not, the harmful event ensued from some defect in the product, whether the defect is identifiable or not, and that the defect arose out of the design or manufacture of the product or while it was in the control of the defendant, and that the defective product proximately caused injury or damage to the plaintiff.

"A breach of warranty may be established where the total effect of the circumstances shown from purchase to accident is adequate to raise an inference that the product was defective and that such condition was causally related to the mishap that occurred." 332 A.2d at 610.

The court refused to give these instructions, stating that they were included in the main charge. The case was submitted to the jury on the basis of four special interrogatories, the pertinent one of which read as follows:

"1. Do you find any defect in the automobile operated by plaintiff making it unfit for its intended use, which was a proximate cause of the circumstances resulting in plaintiff's injuries?

If your answer is 'NO' to question # 1, you need not answer question # 2. If your answer is 'YES' then answer question # 2." *Id.*

The appeals court, after noting that plaintiff did not have to prove a specific defect or design, held that the trial court erred in not giving the requested instructions:

"Defendants' contention that the charge as given was sufficiently broad and included 'a fundamental equivalent' to the requested charge on circumstantial evidence is without merit. Although the judge, in his charge and in interrogatory # 1, referred several times to 'any defect' or to a defect generally, he also made several specific references to plaintiff's 'contended' for or 'claimed' defect. Upon a reading of the entire charge, we can only conclude that the issue of liability was submitted to the jury predicated solely upon the specific defects asserted by plaintiff's experts. This conclusion finds clear support in the colloquy between the Court and plaintiff's counsel, at the time the latter objected to the failure to charge his two requests. The judge noted that he came 'away from this whole trial with the feeling that the plaintiff apparently pinpointed the two possible causes for the car's failure at this given point.' He further added that the case was not tried on any theory that

'there must have been some other reason which caused the car to do it, which we can't explain at all. This would be introducing something entirely new in the theory of the case.'

"Upon the totality of the existing circumstances, we hold that the trial court's failure to charge plaintiff's two requests deprived him of a substantial right, thus mandating a reversal and a new trial as to liability against both defendants." 332 A.2d at 611.

*See also Stewart v. Ford Motor Co.*, 553 F.2d 130 (D.C.Cir.1977) *aff'd* 471 F.2d 733 (3rd Cir. 1973); *Dennis v. Ford Motor Co.*, 332 F.Supp. 901 (W.D.Pa.1971). In the present case, although the instructions did not refer to a specific defect, the special verdict form required the jury to find that the throttle stuck, as opposed to finding "any defect." I find this case to be indistinguishable from *Moraca*—in both cases the jury was not clearly informed that they need only find that the accident more probably than not resulted "from some defect in the product."

Three basic arguments have been advanced as to why the trial court's actions in the present case were not error: (1) that Nobles himself at trial treated the "stuck throttle" as a semantic equivalent to "general defect;" (2) that Nobles had to show some defect, and since he did not show the throttle was stuck he failed to show any defect; and (3) that the "stuck throttle" is in reality a general defect.

As to the argument that Nobles treated "stuck throttle" as the equivalent to "general defect" throughout the trial, Nobles has maintained throughout that he need only prove that the product, the truck, was defective.

In response to a motion to dismiss, Nobles' counsel first argued that he need only "show that a happening occurred that could be attributable to a defect . . . ." When the court kept inquiring about what "defects" Nobles was talking about, Nobles' counsel finally argued that Nobles' testimony that the throttle stuck is sufficient to trigger strict liability in tort. By so arguing in opposition to a motion to dismiss Nobles should not be visited with thereby having conceded that a stuck throttle was a general defect. Rather his argument was simply an effort to accept the trial court's different view of the issue and fall within it.

As to the second argument, Nobles was not required to prove a specific defect, such as a stuck throttle. All that is required of a plaintiff is that his testimony, if believed by the jury, establish circumstances such that it could be inferred that in the normal course of human experience the accident " 'would not have occurred at this point in the product's life span had there not been a defect attributable to the manufacturer.' " *Farmer, supra* at 749, 553 P.2d at 1313.

Finally, as to the third argument that a stuck throttle is a general defect, this misconceives the issue. The difference between a specific and a general defect is not whether the defect can be broken down into subdefects. For example, if the steering wheel malfunctions because the linkage breaks, and that break is caused by a defective bolt, it does not follow that the linkage is the general defect and the broken bolt is the specific defect. This distinction was illustrated in the colloquy between counsel and the trial court:

"Mr. Schroeder: . . . [I]t is not necessary under Idaho law or any law adopting 402A, the doctrine of strict products liability, for the Plaintiff to show a specific defect. *It is only necessary to show that a happening occurred that could be attributable to a defect*; and we submit—

"THE COURT: What defects are you talking about?

"Mr. Schroeder: A defect, we don't have to prove a specific defect. A stuck throttle, why the throttle stuck is not something we have to prove%y(4)(27

. . . .

"THE COURT: *What is the defect in the truck you are talking about? You have got to prove a defect in the truck.*" (Emphasis added.)

The point is that plaintiff *does not have to prove a particular defect* in the truck. All he need do is show from the circumstances of the accident that the accident " 'would not have occurred at this point in the product's life span had there not been a defect attributable to the manufacturer.' " *Farmer, supra* at 749, 553 P.2d at 1313.

Nobles submitted sufficient evidence to make out a prima facie case of a defect in the truck by simply testifying that the power of the engine was so great that he could not stop the truck. That was all he had to testify to to make out his prima facie case. That he may have described a racing engine as a stuck throttle does not mean that the jury has to agree on this description for him to prevail. Nor do his further attempts to show that the reason the engine was unrestrained was because the throttle stuck, and to explain why the throttle stuck, mean that he had to prove that the throttle stuck in order to have the jury pass upon his claim that the truck was defective. Without such proof the plaintiff may well anticipate that his adversary will ask that the jury give little credence to his claim, but nonetheless he is entitled to have the jury pass on his claim under an instruction which properly presents his theory—assuming its legal tenability, which *Farmer* here removes from doubt.

To my mind both the trial court and this Court misconstrue the nature of the holding in *Farmer v. International Harvester Co., supra.* Plaintiff requested the following instruction, which instruction set forth the law as was set forth in *Farmer:*

> "To prove a defective condition it is not necessary to prove a specific defect. Nor is it necessary to prove a defective condition by direct evidence; it may also be proved by circumstantial evidence from which you, weighing all of the evidence, do infer that *in the normal course of human experience an injury would not occur at this point in the product's life span had there not been a defect in the product at the time of its sale to the user.*" (Emphasis added.)

This was a correct statement of the law. Nowhere did the trial court instruct the jury to this effect. The effect of question no. 1 of the special verdict form, then, could only be to give the jury the impression that plaintiff absolutely had to prove that the throttle stuck in order to recover. Such is not the law in Idaho as I read *Farmer.*

I respectfully dissent.