**Nancy E. ELDER and Joseph C. Elder,
Appellees,**

v.

**CRAWLEY BOOK MACHINERY COMPANY, a corporation, Appellant.**

**No. 19001.**

United States Court of Appeals,
Third Circuit.

Argued Jan. 5, 1971.

Decided March 1, 1971.

As Amended April 19, 1971.

Rehearing Denied May 24, 1971.

William C. Walker, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for appellant.

Paul E. Moses, Evans, Ivory & Evans, Pittsburgh, Pa., for appellees.

Before GANEY and ADAMS, Circuit Judges, and WEIS, District Judge.

OPINION OF THE COURT

WEIS, District Judge.

While a layman might be inclined to minimize the question involved in this appeal as an exercise in semantics, the case demonstrates how a shading in meaning of a single word may have a significant effect in a trial.

This is a suit for personal injuries brought under the theory of strict liability as defined by § 402A of the Restatement of Torts 2d. The defendant vigorously pressed the defense of assumption of risk and it is in this context that the meaning of the word "voluntary" became an issue. The Restatement provides that conduct on the part of the plaintiff "in voluntarily and unreasonably proceeding to encounter a known danger" is a bar to recovery.

The trial judge charged the jury that "voluntarily" means "done by design or

intention, intentional, proposed, intended or not accidental. The plaintiffs contend that the injury was accidental. Accidental means happening by chance or unexpectedly, taking place not according to the usual course of things." The defendant excepted to this portion of the charge, contending that "voluntary" is not synonymous with "intentional."

A review of the facts is necessary for an appreciation of the defendant's contention and the trial court's instructions to the jury.

The defendant had manufactured and sold a so-called "Building-In Machine" to the plaintiff's employer some years before the accident which occurred on June 20, 1966. The machine was employed in the final fabrication of a large hard back catalogue of many pages by utilizing hydraulic pressure to perform flattening and creasing ("nipping") functions.

The book would be placed upon the machine on the "bottom platen" (a flat plate), after which the "top platen" would descend and exert pressure on the catalogue, compressing it and smoothing the pages. Thereafter a blade-like device called "an upper nipper" would descend and put a crease in the binding while at the same time a bottom "nipper blade," which was fixed in place like the lower platen, would perform a similar function on the underside of the book. The crease was necessary to allow the cover of the catalogue to be opened easily.

On the return cycle, the nipper blade ascended first and then the top platen would rise slowly in preparation for the next cycle. The upper platen and the upper nipper blade were side by side and operated in parallel planes.

Whenever the machine was idle overnight, the absence of hydraulic pressure caused the top platen to descend onto the lower one. In order to prevent the two surfaces from adhering to each other, the operators of the machine had developed a practice of inserting a small magazine between the two platens. The upper nipper blade, however, remained in

place and while the machine was in the shutdown condition, a gap of about a half inch existed between the top of the upper platen and the bottom of the nipper blade. This aperture appeared only when the machine was idle because when a large catalogue was being processed, its thickness prevented the upper platen from descending to a position where the half inch opening would appear.

The plaintiff's injury occurred as she was preparing the machine for the day's work. After turning on the power, she began to remove the small magazine with her hands, and in some manner the ring and little fingers of her left hand went into the half inch slit between the upper nipped blade and the top of the upper platen. The platen proceeded upwards, severing her fingers in the scissoring action.

The plaintiff's contention that this was an unreasonably dangerous design was accepted by the jury which rendered a verdict in her favor in the amount of $10,000 which the trial court refused to disturb. The defendant does not now contest the jury's resolution of the factual issue of design but confines its appeal to alleged error in the court's interpretation of assumption of risk.

This is a diversity case and the law of Pennsylvania is applicable.[1] In Ferraro v. Ford Motor Company, 423 Pa. 324, 327, 223 A.2d 746, 748, the Supreme Court of that state said:

"After studied consideration, it appears to us that if the buyer knows of the defect and voluntarily and unreasonably proceeds to use the product or encounter a known danger, this should preclude recovery and constitute a complete defense to the action even in cases of strict liability."

The court's language was tracking Comment n of § 402A which states:

"Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in a product, or to

---

1. Pennsylvania adopted § 402A of the Restatement in Webb v. Zern, 422 Pa. 424, 220 A.2d 853.

guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk is a defense under this section * * *"

Defendant argues that in the case *sub judice* the fact that the injury occurred is proof beyond doubt that the plaintiff's finger had been inserted into the dangerous opening, albeit the plaintiff on several occasions denied that she knew how it came to be there. On cross-examination of the plaintiff, the following exchange took place:

"Q. Mrs. Edler, will you concede that what happened was that in a moment of carelessness and thoughtlessness, that you put your fingers into a place where they were not supposed to be, didn't you?

A. No, I wouldn't do that deliberately, stick my hand in there.

Q. Well, of course you didn't do it deliberately, but you did it in a moment, a split-second of thoughtlessness and carelessness, didn't you?

A. No.

Q. Well, how did you do it? Why did you do it?

A. I don't know, It happened instantly.

Q. You did do it, didn't you?

A. It happened."

■ Defendant argues that since the plaintiff's fingers were in the aperture and no outside force placed them there, it follows that there had to have been a "voluntary" act on her part. Defendant's interpretation of the word appears to be similar to that in use in physiology where activities regulated by the autonomic nervous system are compared with those considered voluntary, e. g., the automatic beating of the heart as contrasted with the movement of an arm or leg. We must reject such an interpretation of the word as having application to the theory of assumption of risk.

In defining the doctrine, the Restatement makes it clear that the law envisions a conscious appreciation of danger and willingness to risk it. Thus Comment d, § 496A says:

"In theory the distinction between the two [contributory negligence and assumption of risk] is that assumption of risk rests upon the voluntary consent of the plaintiff to encounter the risk and take his chances * * * A subjective standard is applied to assumption of the risk, in determining whether the plaintiff knows, understands, and appreciates the risk."

Comment e, § 496C:

" * * * assumption of risk is a matter of what the plaintiff knows, understands, and is willing to accept."

Comment c, § 496D:

"The standard to be applied is a subjective one, of what the particular plaintiff in fact sees, knows, understands and appreciates * * * If by reason of age, or lack of information, experience, intelligence, or judgment, the plaintiff does not understand the risk involved in a known situation, he will not be taken to assume the risk, although it may still be found that his conduct is contributory negligence * * *"

See also Green v. Sanitary Scale, 431 F.2d 371 (3rd Cir. 1970), Cf. Bartkewich v. Billinger, 432 Pa. 351, 247 A.2d 603,[2] Tort Defenses to Strict Products Liability, 20 Syracuse L.Rev. 924 (1968–69).

2. While Bartkewich v. Billinger has been cited as being concerned with assumption of risk, careful reading will show that the opinion holds, not that the plaintiff was guilty of assumption of risk by placing his hand in a machine, but that there was a failure to prove that the machine itself was in a defective condition because of lack of a guard which would have prevented the plaintiff from voluntarily placing his person in danger of injury. The case therefore stands for the proposition that the plaintiff failed to prove that the machine was dangerously defective, not that the defendant proved assumption of risk on the part of the plaintiff.

We conclude, therefore, that if the plaintiff's fingers became placed in a dangerous position in the machine by reason of inadvertence, momentary inattention or diversion of attention, that this would not amount to assumption of the risk.

This construction of the defense is consistent with the philosophy of the Restatement which permits the injured consumer to recover from the manufacturer who is held responsible for a defect in the product even without negligence on his part. This theory of concern for the user, however, is not unfairly frustrated by sanctioning a defense against the claim of a person who knows of the defect but chooses to use the product nevertheless. It is fair to state in such a situation that the manufacturer's obligation to furnish a safe product has been waived by the consumer's considered choice to chance the danger involved in the defect.

The judgment of the District Court will be affirmed.