Darol D. TAYLOR, a minor, by his guardian David A. Taylor

v.

**PAUL O. ABBE, INC.**

v.

**SUPERIOR ZINC COMPANY.**

Civ. A. No. 71–1357.

United States District Court,
E. D. Pennsylvania.

May 28, 1974.

Alan R. Kutner, Philadelphia, Pa., for plaintiff.

Ralph P. Higgins, Philadelphia, Pa., for defendant.

Robert R. Reeder, Philadelphia, Pa., for third party defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Plaintiff, Darol D. Taylor, commenced this diversity action to recover damages for injuries sustained when his right hand became enmeshed in the gears of an industrial machine known as a "continuous pebble mill." The above accident resulted in the amputation of Darol Taylor's right hand and approximately three inches of his wrist. The trial of the matter was bifurcated on the questions of liability and damages. At the close of a four-day trial on the issue of liability, the jury returned a verdict against the defendant, the manufacturer of the gears, and the third-party defendant, plaintiff's employer. After hearing testimony as to damages, the jury awarded the plaintiff $236,652. Both defendants have filed a motion for a new trial. Defendant Paul O. Abbe, Inc. ("Abbe"), has also moved for judgment notwithstanding the verdict.

The following operative facts were adduced at trial:

At the time of the accident, the plaintiff was 17 years old and had been an employee of Superior Zinc Company ("Superior Zinc") for about one month. Taylor's duties consisted of general maintenance and supervision of the area in which the pebble mill was located. He was specifically charged with the responsibility of feeding the conveyor belt, watching the valves, and assuring that the tanks did not overflow by adjusting the valves when necessary.

Plaintiff testified that on the afternoon of April 13, 1970, he took a short break from his duties at the plant. He removed his work gloves and placed them on top of a railing which surrounded the pebble mill. Taylor was resting against the rail, facing the machine, as he peered out a window. As he began to return to work, one of the gloves fell on the ground between the railing and the pebble mill. The plaintiff testified that he bent over to pick up the gloves and almost simultaneously

felt himself "being caught, being pulled." (N.T. 1–30) The injured party was unable to state precisely how his hand became caught in the in-running point of the gear mechanism. Frantic attempts to stop the machine by pulling on the conveyor belt proved to be of no avail. It was not until the plaintiff's entire right hand had become enmeshed in the gears that other employees heard his screams and finally managed to shut off the machine.

As previously mentioned, the machine involved in this accident was called a "continuous pebble mill." Plaintiff's hand became caught in the in-running pinch point between two power-driven gears on the pebble mill. The original pebble mill had been in operation at the Superior Zinc plant for over 50 years prior to the accident and had been built and installed by another manufacturer. After a short period in which the mill was not in use, plaintiff's employer sought to place the machine back into operation. In order to accomplish the reactivation of the mill, the defendant manufacturer was contacted by Superior Zinc in connection with the replacement of various essential parts of the pebble mill. An agreement as to specifications and price was eventually reached and the defendant installed as replacement parts the main drum, the pinion gear, the ring gear, and the jack shaft. The total price of the pinion and ring gears, together with the other component parts manufactured and supplied by the defendant Abbe, was $4,965.

The evidence established that at the time of the accident there was no protective guard on the pebble mill that would prevent a human limb from being caught in the nip point created by the meshing of the pinion gear and ring gear. The evidence did show, however, that the defendant Abbe manufactured a protective gear guard as a component part but that such a guard was available as optional equipment only. In the instant case, the manufacturer offered the guard to Superior Zinc at a price of

$110. The offer for the guard was rejected by plaintiff's employer.

Plaintiff's expert Paul K. Goldberg testified that, based on his experience working with pebble mills in general and his observation of the pebble mill in question, the component parts sold to Superior Zinc by Abbe were in a defectively dangerous condition due to the absence of a gear guard and an emergency switch in the immediate area of the gear mechanism. Defendant's expert stated that, if the gear guard manufactured by Abbe had been on the machine, the accident involving Darol Taylor would not have occurred.

### Discussion

The principal contention raised by the defendant manufacturer in support of the post-trial motions is that plaintiff failed to introduce sufficient evidence as to how his hand became entangled in the gears. Defendant argues that the jury could have only resorted to guess or speculation with respect to the factual context of the accident in that plaintiff was not able to state exactly how his right hand got caught in the machine. The issue presented is whether the plaintiff introduced sufficient evidence from which the jury could reasonably conclude that the injury to his hand was proximately caused by the unreasonably dangerous condition of the pebble mill.

It is well settled that the responsibility for determining whether the plaintiff has established a *prima facie* case of liability rests with the trial judge. Neville Chemical Company v. Union Carbide Corporation, 422 F.2d 1205, 1211 (3rd Cir. 1970); Denneny v. Siegel, 407 F.2d 433, 440 (3rd Cir. 1969). The trial court must determine as a minimum requirement of a *prima facie* case whether the plaintiff has presented sufficient facts for the jury to conclude reasonably that the preponderance of the evidence favors liability. Denneny v. Siegel, *supra* at p. 440; Smith v. Bell Telephone Company of Pennsylvania, 397 Pa. 134, 153 A.2d 477

(1959). The Court is convinced now, as it was at the close of plaintiff's case, that sufficient evidence was introduced from which the jury could reasonably and logically determine the cause of the accident. It was not necessary for the jury to guess or speculate in regard to the operative or critical facts which precipitated the entanglement of the plaintiff's hand in the pebble mill. The direct testimony of the plaintiff established that he was standing close to the railing, that his work glove fell to the floor in close proximity to the machine and that as he bent down to retrieve the glove he suddenly felt his hand caught and being pulled into the gears. The jury was presented with a sufficiently definite factual backdrop upon which a finding of liability could logically be based.

Defendant further contends that the act of reaching into the area dangerously close to the gear mechanism constituted a voluntary assumption of the risk as a matter of law. Assumption of risk is defined in the law as a voluntary and willing encounter of a risk of danger which is known, understood, and appreciated by the party against whom the defense is asserted. To effect the denial of recovery under the doctrine of assumption of the risk, the defendant must prove that the plaintiff subjectively and consciously appreciated the danger but, nonetheless, willingly chose to risk such danger. Green v. Parisi, 478 F.2d 313, 315 (3rd Cir. 1973); Elder v. Crawley Book Machinery Company, 441 F.2d 771, 773 (3rd Cir. 1971). The Court is fully aware that under some circumstances it is appropriate for the trial court to determine as a matter of law that the plaintiff voluntarily assumed the risk of injury. Colosimo v. May Department Store, 466 F.2d 1234 (3rd Cir. 1972). However, the facts of the case at bar dictated that the issue of assumption of risk be submitted to the jury.

In order to establish assumption of risk as a matter of law under the

facts of the instant case, the defendant had the burden of proving that Taylor consciously realized the danger of placing his hand *in the nip point* and then voluntarily chose to risk such a danger. The evidence presented at trial did not support the above finding. During cross-examination, the plaintiff testified as follows:

> "Sir, when my gloves fell, really I didn't think that anything would have been wrong, in fact, if I just bent over and picked, you know—just got my gloves myself. I didn't suspect that by doing this I would have got hurt or anything or else I would have went and got a shovel." (N.T. 2–17)

At the time of this unfortunate incident, Taylor was a relatively unskilled and uneducated 17-year-old boy who had been working at Superior Zinc for only one month. He testified that he "didn't think that anything would have been wrong" or he would have used a shovel to retrieve the fallen glove. The plaintiff's actions immediately prior to the accident, as described by the testimony, did not rise to the level of conscious appreciation and confrontation of a known danger so as to warrant a finding of assumption of risk as a matter of law. It was the proper function of the jury to determine whether the plaintiff's hand became enmeshed in the gears by reason of inadvertence, or monetary inattention, or through a conscious decision to challenge the dangers inherent in the exposed and unguarded gear mechanism. The Court so instructed. Green v. Sanitary Scale Company, 431 F.2d 371, 374 (3rd Cir. 1970).

■ Plaintiff's cause of action was based on the doctrine of strict liability in tort as enunciated in Section 402A of the Restatement of Torts 2d. The defendant herein claims that the standard of liability contained in Section 402A is not applicable to the sale of the subject machinery in that the sale took place approximately two years prior to the adoption of Section 402A of the Restatement as the law of Pennsylvania in Webb v. Zern, 422 Pa. 424, 220 A.2d 853 (1966). Neither the Restatement provisions nor the relevant decisional law has imposed a time limitation with respect to the applicability of Section 402A. The fact that a product was sold by the manufacturer prior to 1966 does not render the principles of strict liability expressed in Section 402A inapplicable to such sale. See, Frankel v. Lull Engineering, 470 F.2d 995 (3rd Cir. 1973); Dorsey v. Yoder, 331 F.Supp. 753 (E.D. Pa.1971).

■ The jury returned a verdict of $236,652 in favor of Taylor; of which $163,400 was awarded as damages because of plaintiff's loss of future earning capacity. Defendant contends in the motion for a new trial that the plaintiff failed to present sufficient evidence on which the jury could logically compute an amount of damages to be awarded for loss of future earning power. Under Pennsylvania law, where there is evidence that a plaintiff has suffered a disabling permanent injury, it is a jury question as to whether such injury will result in a future loss of earning power. Frankel v. Todd, 393 F.2d 435, 438 (3rd Cir. 1968). In light of the nature of the injury which gave rise to this litigation, there can be no question that the plaintiff suffered a permanent and disabling injury. Given a permanent disabling injury, the jury must determine whether the injury will cause a loss of future earning capacity. The real issue presented is whether the record contained sufficient credible evidence to enable the jury to arrive at a monetary figure which would accurately and reasonably reflect the extent of plaintiff's future loss of earning power.

The plaintiff testified that during 1968 and 1969 he worked for a full year with Mayco Oil Company earning $70 per week. He further stated that at the time of the accident his salary at Superior Zinc was $109 per week. Dr. Philip H. Lewis, a specialist in orthopedic surgery, testified that plaintiff suffers from a 50% disability of the upper right extremity. The doctor also noted

that the use of a properly fitted and workable artificial prothesis would reduce the plaintiff's disability factor to 25%. Counsel stipulated that Taylor's work life expectancy was 42 years from the time of trial. Taylor presented evidence as to his difficulty in obtaining regular and full time employment after the accident. The jury was also apprised of the plaintiff's efforts to enroll and participate in various rehabilitative programs.

 It is important to note at this juncture that plaintiff's employment and earnings background was limited due to his age and enrollment in school. The plaintiff produced that evidence which was available and relevant to the question of loss of future earnings. The Court is convinced that the jury had sufficient evidence at its disposal to reasonably and logically determine an amount of damages due to the plaintiff for the loss of future earning capacity. The law does not require the jury's estimation of damages to be completely free of all elements of speculation. Frankel v. Todd, *supra* at p. 440; Smith v. Bowater Steamship Company, 339 F.Supp. 399, 402 (E.D.Pa.1972). Furthermore, an award of $163,400 for lost earning power to a young man of 21 who has lost his right hand is not an unreasonable or excessive amount.[1]

Superior Zinc, the plaintiff's employer and third-party defendant herein, has filed a motion for a new trial. The employer argues that the trial court committed error in allowing testimony concerning the location of an "on-off" switch during the liability phase of the case. The position of the employer is that the absence of an electrical cutoff switch on the pebble mill could not be the proximate cause of the plaintiff's accident; hence, any testimony as to the lack of such a precautionary device was

unduly prejudicial to the extent that such testimony applied to the employer.

Taylor testified on direct examination that after his hand became entangled in the gears he attempted for ten or fifteen minutes to shut off the machine by pulling on the conveyor belt. Plaintiff was unable to turn the pebble mill off. After being caught in the gears for approximately fifteen minutes, Taylor was finally able to attract the attention of other employees. Five additional minutes elapsed before one of the employees located the on-off switch and shut down the machine. The electrical switch was located about forty feet from the machine on a wall.

Plaintiff's expert testified that the machine was unreasonably dangerous because of the absence of an emergency on-off switch on the machine itself. The expert further stated that his opinion as to the defectively dangerous condition of the pebble mill was supported in part by the Pennsylvania Department of Labor and Industry Regulations which require the presence of an on-off switch.

In special interrogatories submitted to the jury, Superior Zinc was found to be negligent and its negligence a proximate cause of the injuries sustained by the plaintiff. Upon a detailed review of the record and briefs submitted by counsel, the Court is of the opinion that there was sufficient evidence from which the jury could reasonably conclude that the employer was negligent and that its negligence proximately caused the accident.

The avowed purpose of a switch positioned on the machine itself or in close proximity to the machine would be to provide an employee working on or around the machine with reasonably accessible means to turn off the machine before approaching the danger area. At

---

1. Before the jury was charged, all counsel agreed that the verdict for lost future earnings should, if awarded, be a gross figure, leaving the reduction-to-present-worth computation for post-verdict stipulation by counsel. As agreed, this stipulation was carried out and on February 26, 1974, the gross amount of $163,400 was reduced to $81,161 which, when combined with the remaining damages, represented the total sum entered as judgment in the case.

the time of the accident, no switch was present. In fact, Darol Taylor testified that he did not know where the cutoff switch was located. This statement was supported by testimony that his hand remained in the machine for five minutes after the other employees discovered his predicament. The jury could have reasonably concluded that had an electrical switch been located on the machine this accident would not have occurred in the first place.

In addition, there can be no question that the lack of an emergency switch caused a serious and definite aggravation of the plaintiff's injuries. When Taylor initially realized that he was caught, only his middle three fingers up to the knuckles were enmeshed in the machine. When the machine was finally shut off, plaintiff's hand was completely mangled and crushed. (N.T. 5–25) The entire palm had been enmeshed; the small finger was almost severed and the thumb on the right hand was mangled. (N.T. 1–44) The evidence clearly established that the injuries to the thumb, small finger, and the entire palm of plaintiff's hand were attributable to plaintiff's inability to turn off the machine after he realized that the three middle fingers had become enmeshed in the gears.

Under the facts of this case, the third-party defendant's reliance on the case of Barber v. John C. Kohler Co., 428 Pa. 219, 237 A.2d 224 (1968), is misplaced. In *Barber*, the plaintiff fell from a scaffold three feet above the ground when a metal brace slipped. Although the scaffold was extended only three feet off the ground, plaintiff fell an additional sixteen feet into an uncovered hole in the ground beneath the scaffold. The injured workman instituted an action in negligence against the party responsible for the excavation. The trial court dismissed the action on the grounds that even if defendant's act of leaving the sixteen foot deep hole uncovered was negligent, that negligence was not the cause of plaintiff's injury. The court concluded that the cause of

the fall was the defective scaffold and not the uncovered hole.

Undoubtedly, the hole in the ground did not cause the plaintiff in *Barber* to fall off the scaffold. However, this Court is unable to conclude as a matter of law that the absence of an on-off switch was not a proximate cause of the entanglement of Taylor's hand in the machine. The question of proximate causation was properly within the province of the jury. The Court is not now disposed to disturb the jury's finding of proximate causation as to the employer.

The remaining contentions raised by the manufacturer and the employer do not warrant the granting of the motions for a new trial or judgment notwithstanding the verdict. Accordingly, the motions will be denied.