396 A.2d 1364

**Marion ATKINS, Appellant, at No. 707**

v.

**URBAN REDEVELOPMENT AUTHORITY OF PITTSBURGH, a Municipal Authority, Appellee,**

v.

**HOUSING AUTHORITY OF CITY OF PITTSBURGH, Appellee-Appellant, at No. 777.**

Superior Court of Pennsylvania.

Argued Oct. 26, 1978.
Decided Jan. 24, 1979.

Joseph M. Zoffer, Pittsburgh, for appellant at No. 707 and for appellee at No. 777.

George I. Buckler, Pittsburgh, for appellant at No. 777 and for appellee at No. 707.

Cosmos J. Reale, Pittsburgh, for appellee Urban Redevelopment Authority at Nos. 707 and 777.

Before VAN der VOORT, SPAETH and MONTGOMERY, JJ.

MONTGOMERY, Judge:

This trespass action was brought against the Urban Redevelopment Authority of Pittsburgh (Urban) as the owner of real property known as 549 Junilla Street in the city of Pittsburgh by Marion Atkins, plaintiff, who was an employee of the Housing Authority of the City of Pittsburgh (Housing). Plaintiff was injured on October 11, 1973 at about 3:30 P.M. when he fell upon entering the stairway leading to the basement of the aforesaid premises while he was inspecting them to see if there were any meters left in the basement prior to the demolition of the building by the defendant, Urban.

Thereafter, Urban filed a complaint against Housing as an additional defendant alleging that under an agreement which they had entered into, Housing had the duty "to supervise, direct, and conduct the management, operation, maintenance and leasing of the property in question, which duty included the performance of necessary repairs to the property." On the basis of this agreement Urban denied liability and alleged that, if any liability existed, Housing was solely liable or jointly and severably liable, or liable over to Urban entitling Urban to indemnification and/or contribution from Housing with respect to any verdict or judgment recovered in the action.

Housing answered the third party complaint filed by Urban by alleging that since the plaintiff was its employee, jurisdiction was exclusively in the Workmen's Compensation Bureau and Workmen's Compensation Board of the Commonwealth of Pennsylvania; and further, that it has been making workmen's compensation payments to plaintiff and has been released from all liability to him. It also denied ever having had title to, or possession or control of the subject property.

On these pleadings, the case was tried before Honorable Frederick J. Weir, Judge and a jury which returned a verdict in plaintiff's favor against both Urban and Housing with a verdict over in favor of Urban against Housing by direction of the court.

Urban filed posttrial motions for a new trial and for Judgment in its favor N.O.V. Housing filed the same motions. Housing also filed a motion to remold the verdict so as to reinstate the jury's original verdict of joint liability against both Urban and Housing.

After argument, the Court en Banc (Weir and Louik, JJ.) granted the motions of both Urban and Housing for judgments n. o. v. and entered judgments in their favor; and denied their motions for a new trial. The court did not pass on Housing's motion to remold the verdict for the obvious reason judgment N.O.V. was entered in its favor.

Appeals were thereupon taken by plaintiff, Marion Atkins (707) and by Housing (777) which are now before us. Urban did not appeal.

Plaintiff-appellant argues two points viz; Judgments n. o. v. should not have been entered on the facts of record which do not show contributory negligence on the part of plaintiff as a matter of law; and do show notice to both Urban and Housing of the defect which caused the injuries to plaintiff. These were the two reasons assigned by the court en banc in its opinion for its action in entering the n. o. v. judgments, i. e., that plaintiff was guilty of contributory negligence as a matter of law and that neither Urban nor Housing were chargeable with notice of the defect which caused plaintiff to fall.

Housing argues the additional point that Judge Weir should not have directed a verdict over in favor of Urban against it. This argument becomes unimportant if the judgment n. o. v. are permitted to stand and was so stated by the court en banc in its opinion.

Housing seeks to have the judgment n. o. v. in its favor affirmed since, it argues, there can be no liability imposed

on it as the employer of plaintiff; or if a new trial is granted, that the lower court be directed to hold, that there cannot be any liability over against it in favor of Urban by way of indemnity for the same reason.

Plaintiff seeks to have the judgments n. o. v. reversed and the jury's original verdict against both defendants reinstated, eliminating the lower court's molding of the verdict in favor of Urban against Housing.

### Appeal of Housing (777)

This appeal seems to be precautionary in nature to overcome the effect of the verdict over in favor of Urban in case a new trial is granted. If the judgment n. o. v. is sustained, the question of molding becomes moot. Therefore, we shall first dispose of this appeal.

We are constrained to hold the judgment n. o. v. in favor of Housing was proper and should be sustained. There being no dispute as to plaintiff's status as an employee of Housing, his employer is insulated against any claim he may have for negligence on its part, the employee being limited to a claim under the Workmen's Compensation Act, *Socha v. Metz*, 385 Pa. 632, 123 A.2d 837 (1956); *Hyzy v. Pittsburgh Coal Co.*, 384 Pa. 316, 121 A.2d 85 (1956). This principle of law does not seem to be questioned by either plaintiff or Urban, although plaintiff seeks to have a judgment entered in his favor according to the verdict as rendered by the jury against both Urban and Housing before it was molded so that the negligence of both Urban and Housing may be established.

In *Burke et ux v. Duquesne Light Co.*, 231 Pa.Super. 412, 332 A.2d 544 (1974), this court reviewed this subject in an exhaustive opinion written for the court by Judge Price, with an equally exhaustive dissenting opinion written by President Judge Jacobs, joined in by Judge Hoffman (now Senior Judge). The majority opinion stands for the principle that in a common law tort action by an employee against a third party tort-feasor, the original defendant may bring the employer in as an additional defendant on the basis of sole

liability, joint liability or liability over. The opinion declares that the Workmen's Compensation Act does not affect the right of the original non-employer defendant to try his case against the additional defendant employer, so that the trier of fact may determine which of the parties, if either, was negligent. In such case, if the jury finds the additional defendant employer solely liable, then the defense of Workmen's Compensation liability may be raised at the time of execution, at which time it renders the plaintiff without a remedy. It is also suggested that in such case a motion for judgment n. o. v. or a rule to show cause why the judgment should not be marked satisfied would be the proper procedure.

The minority in *Burke* holds to the view that the employer may not be joined in such a case.

Subsequently, however, in *Hefferin v. Stempkowski*, 247 Pa.Super. 366, 372 A. 869 (1977), we held that the 1974 amendment to Pennsylvania Workmen's Compensation Act, Act of December 5, 1974, P.L. 782 No. 263, 77 P.S. 481(b) bars the joinder of a plaintiff's employer as an additional defendant in an action brought by the plaintiff employee against a third party. In accord see *Bell v. Koppers Co., Inc.*, 253 Pa.Super. 590, 384 A.2d 980 (1978).

Although *Hefferin* holds that there may not be a joinder, in such cases there is one exception to the rule. The 1974 amendment provides that its prohibition, as interpreted by *Hefferin*, against joining employers as additional defendants has one exception viz "—unless liability for such damages, contribution, or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action."

The issue is thereby reduced to the question whether there is any liability over by way of indemnity based on a writing expressly agreeing to indemnity. If there is such a writing, then we interpret the 1974 amendment as permitting a joinder of the employer. As we read the brief of Urban, its

claim to a verdict over against Housing is based entirely on indemnity. Plaintiff seeks the elimination of the verdict over on any basis.

In approaching the issue, we note that Urban, although referring to an agreement with Housing and seeking to impose liability over against Housing, by reason thereof, nowhere in its complaint to join Housing does it refer to any express undertaking by Housing to indemnify it against loss by reason of claims in tort actions. Furthermore, Urban, in its brief, does not rely on any express agreement by Housing to indemnify it against loss. On the contrary, it predicates its claim to a verdict over on the theory that Housing, by assuming the responsibilities of maintenance, control and repair of the premises in question established a principal-agent relationship between Urban and Housing; and allegedly having breached a duty, thus impaired, Urban became entitled to reimbursement for any damages it became obligated to pay to plaintiff because of Housing's breach. Urban relies on *Burke* (supra) to support its argument.

From the foregoing, we must conclude that Urban is not relying on the exception contained in the 1974 amendment to the Workmen's Compensation Act. Whatever support of Urban's argument that can be garnered from *Burke* has been overruled by *Hefferin* (supra) and *Bell* (supra) in interpreting the 1974 amendment which is specific; viz "in the event injury or death to an employee is caused by a third party, then such employee—may bring his action against such third party, but the employer—shall not be liable to a third party for damages, contribution, or indemnity in an action at law, or otherwise unless—expressly provided for in a written contract—". Certainly Urban's claim comes within the definition damages, contribution or indemnity. In fact, Urban, in its brief, identified its claim against Housing as one of indemnity.

Furthermore, we cannot agree with Urban that the issue was not raised by Housing in the court below. Housing objected to the molding of the verdict by the trial judge and also filed a petition to have the verdict restored to what the jury originally returned.

Our conclusion, therefore, is that the lower court erred in molding the verdict and refusing Housing's petition to restore it to what it was as originally returned by the jury. However, we are also of the opinion that entry of judgment n. o. v. in favor of Housing was proper and will be sustained.

The action of the trial judge in molding the jury's original verdict will be reversed and the judgment of n. o. v. in favor of Housing will be sustained for the reason that it should not have been joined as an additional defendant but having been joined improperly, judgment n. o. v. was properly entered. *Burke* (supra), *Grasha v. Ingersoll-Rand Co.*, 439 Pa. 216, 266 A.2d 710 (1970).

### Appeal of Marion Atkins (707)

This appeal raises two issues, i. e. (1) Was plaintiff guilty of contributory negligence as a matter of law?, and (2) Did Redevelopment have notice of the defect in its property which caused plaintiff to fall and failing to correct the defect after notice, became liable to plaintiff for its neglect in not protecting him?

In approaching these issues, we recognize the following rules, i. e., (1) that in considering a motion for judgment n. o. v., the evidence together with all reasonable inferences therefrom must be considered in the light most favorable to the verdict winner; (2) that only that evidence which supports the verdict may be considered; (3) that all conflicts must be resolved in favor of the prevailing parties; and finally (4) a judgment n. o. v. should not be entered unless the facts are such that no two reasonable persons could fail to agree that the incident was improper. See *Frank v. Peckich*, 257 Pa.Super. 561, 391 A.2d 624, (1978) for authorities cited in the opinion in support of affirmance by Judge Spaeth.

Regardless of the rules just recited, certain facts in the present case are beyond dispute. Urban acquired the property known as 549 Junilla Street, Pittsburgh, Pennsylvania, on March 10, 1971 in connection with a renewal project in which certain buildings were to be restored and others

demolished. The property in question was vacant and was scheduled for demolition. Urban does not engage in the physical work of restoration or demolition but engages Housing under a written contract to perform such services in connection with the properties it acquires. No repairs to the property in question were made by Housing and it was uninhabitable. Housing did, however, on three occasions [1] close the doors and windows by placing coverings over them ("boarding them up") to prevent vandalism and entry by unauthorized persons. On October 9, 1973, Housing was directed by Urban to do a demolition check on the premises and pursuant to that request, Housing sent a crew to make the check which included plaintiff, who was a general maintenance worker, a plumber and a foreman. The purpose of the check was to see that all utilities, including the water, gas and electric services were shut off and the meters removed from the premises prior to demolition. The crew, including plaintiff, went to the premises on October 11, 1973, to make this check and in performing his duties, plaintiff fell and was injured. Plaintiff knew the property was vacant, uninhabitable and scheduled for demolition.

Plaintiff's version of the accident follows. He and the other members of his crew entered the house on the afternoon of October 11, 1973. It was not boarded up at the time and there was light coming in from the windows and doors. He intended to walk down the stairs to the cellar to check the water meter which had been located on the basement floor. Although there was some light down in the basement coming in from the cellar door which was off its hinges, he was unable from his position on the first floor to determine whether the water meter had been removed. To assure himself the meter had been removed, he approached the stairway, first reaching a landing from which he had no problem seeing. From the landing he stepped on the first step without incident. At this point he could see the bottom four or five steps and noticed nothing unusual about them,

1. March 16, 1971 the property was boarded up and shut down. August 11, 1971 the property was cleaned up and boarded up. September 7, 1972 the property was shut down and boarded up.

but on stepping down to the second step, he was caused to fall because it was missing. Although he was able to see the landing, the first step and the last five or six steps, he did not see that the second step was missing. The stairway was on about a 15% grade and the steps approximately 2½ feet wide by eight inches high. There were about eight steps in the stairway.

Plaintiff testified on direct examination that his fall occurred as follows:

(A) "Well, I had opened the door and I looked and I saw the light down there, so I looked and I saw about five or six—I was looking down the steps and after I looked to see the meters, I started on down to check the meter, and when I hit the first step, I went to make a second step, down I went, there was no step there."

On cross examination he testified:

(Q) You could see the top step, you couldn't see the second step, you could see the—I beg your pardon.

(A) You go ahead

(Q) No, I don't want to stop you.

(A) No, I mean, you was trying to say I could see the step. I didn't look for the second step, actually, because I was looking down at the bottom steps when I started down. If I would have looked down at my toes, I would have saw the second step was missing, probably.

(Q) I just want to make sure that I get your testimony correct. You looked down before you went down the steps, you looked at your toes and you saw the first step?

(A) I didn't look at my toes to the first step. I went down there, I looked like this (indicating), I said, oh, I see the cellar steps down there, I looked in the corner, I saw the gas meter and I saw the electric meter. I said, I'll go down and check on the water meter. I didn't actually look down at the step underneath my feet.

. . . . .

(Q) The top step up there you could see?

(A)  Yeah.

(Q)  You couldn't see one, two, three steps?

(A)  I didn't pay any attention to looking there.

(Q)  You weren't paying any attention to those three steps?

(A)  Not in that direction of the second step. I wasn't looking straight down at my feet. I was looking over toward the cellar.

(Q)  Okay. Well, was this area lit up, these three steps lit here? One, two, three, were they lit?

(A)  You could see because the door is on the side there and the light was coming in from the door. There was an empty lot right next door to the house.

(Q)  Well, could you see these three steps here?       ·

(A)  Yeah, if I would have looked down, I could see, I could see them if I would have made a special point of looking.

Plaintiff has shown by his own testimony that he either did not look where he was stepping or failed to see what was apparent if he did look.

One who fails to observe a dangerous condition plainly visible and nevertheless proceeds without regard to his own safety must be held guilty of contributory negligence as a matter of law. *Miller v. Borough of Exeter,* 366 Pa. 336, 77 A.2d 395 (1951), *Sloss v. Greenberger,* 396 Pa. 353, 152 A.2d 910 (1959), *Knapp v. Bradford City,* 432 Pa. 172, 247 A.2d 575 (1968), *Kresovich v. Fitzsimmons,* 439 Pa. 10, 264 A.2d 585 (1970).

The excuse appellant offers for not seeing the missing step is that in the performance of his duties, he was looking for the meters and thus his attention was diverted from the step. Citing *Stringert v. Lastik Products Co., Inc.,* 397 Pa. 503, 155 A.2d 625 (1959) and *VanZandt v. Phila. V & W R. R. Co.,* 248 Pa. 276, 93 A. 1010 (1951), *Cooper v. Heintz Mfg. Co.,* 385 Pa. 296, 122 A.2d 699 (1956). Appellant argues that in determining the standard of conduct of one who is injured

in the performance of his employment, the working conditions, and all of the circumstances incident thereto, including his obligations to do his job must be considered; and therefore, he argues his contributing negligence was properly left to the jury. *Stevenson v. Pennsylvania Sports and Enterprises, Inc.,* 372 Pa. 157, 93 A.2d 236 (1953) is also cited in support of appellant's position.

We have clearly examined the cases cited by appellant-plaintiff as well as those cited by appellee, i. e., *Kalin v. Delaware Valley Telephone Company,* 63 D. & C.2d 549 (1973), aff'd 228 Pa.Super. 849, 316 A.2d 912 (1974) and *Hill v. Richards,* 406 Pa. 452, 178 A.2d 705 (1962), and the principle of law advanced by appellant appears sound although his conclusion based on that principle does not necessarily follow.

"What is required of a workman is that he exercise care for his safety according to the circumstances. He knows he is occupying a place of great danger and his care must be commensurate with that danger. He is equally cognizant of the fact that he must perform faithfully the services required of him. Both obligations are resting upon him and each must be met with due regard to the other". *Kalin v. Delaware Valley Telephone Co.* (Supra).

Applying that principle to the established facts of this case, we are led to the conclusion that appellant, by his own testimony, failed to exercise proper care for his own safety and therefore was guilty of contributory negligence.

Appellant knew the house was vacant, uninhabited and ready for demolition. He was experienced generally with the type of house he was inspecting, for he had been doing this pre-demolition inspection work for over three years. Before descending the steps, he had located the gas and electric meters, and he was descending the steps to the basement because he knew the water meter was located there. He was not trying to locate it as he descended the stairs.

The stairs were well lighted and he could have seen the step was missing had he looked. But he failed to take the ordinary precaution to look where he was going, let alone the additional precautions he should have taken in such a house which he knew was in a dilapidated condition. The performance of his duties as an inspector did not prevent him from doing so.

The other reason relied on by the lower court for entering judgment n. o. v. in Urban's favor was that it had no notice of the defect and without that notice failed to correct the defect by proper repairs before ordering Housing to send its employees to inspect the building. We have difficulty in accepting this as a sound reason. Urban knew the building was in an uninhabitable condition, and although it may not have had specific knowledge of the missing step, it did know that there were many hazards to be encountered by anyone entering the building. To avoid harm from these hazards as well as to prevent further deterioration, it authorized Housing to board up the structure. Furthermore, it knew, or should have known, these efforts failed and it became necessary to repeat the work several times.

Regardless, "(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Section 343A of the Restatement (Second) of Torts. The facts of this case bring it within this provision. The condition was obvious and being obvious, there was no reason for Urban to anticipate danger from it merely because appellant was inspecting it.

Urban defends its position further for the reason it was an owner out of possession, having engaged Housing to manage the property, and as manager to make needed repairs or erect safeguards. Our interpretation of the contract between Urban and Housing does not support this position. On the contrary, Housing is designated as Urban's agent, not an independent contractor, with certain limited powers over the property, other powers being subject to the approv-

al of Urban. Thus, Urban cannot sustain its position as an owner out of possession.

■ However, we are led to the conclusion that Urban owed no duty to appellant-plaintiff to make repairs to the step, obviously missing, before ordering the inspection of the property.

The judgments n. o. v. in favor of Urban Redevelopment Authority of Pittsburgh and the Housing Authority of the City of Pittsburgh are affirmed; this renders unnecessary any action on the petition to restore the verdict to the form which the jury rendered before it was molded by the trial judge.

SPAETH, J., concurs in the result.