## Muller v. Midstates Equipment Service, Inc.

*Herbert Monheit*, for plaintiffs.

*John W. Frazier, IV* and *Louis S. Criden*, for defendants.

*Joseph F. Van Horn, Jr.*, for additional defendants.

TAKIFF, *J.*, June 28, 1979—Presently before the court is a motion for summary judgment on behalf of defendant Mobil Oil Corporation (Mobil).

Plaintiffs commenced the instant trespass action in February, 1974. The complaint alleges that plaintiff Thomas Muller sustained personal injuries on February 8, 1972, when a "gas" pump he was operating "suddenly broke due to a defect." It further avers that Mobil then owned, operated, managed and controlled, together with co-defendant Midstates Equipment Service, Inc., the

pump in question. The "negligence and careless-
ness" of defendants is alleged to have consisted of,
inter alia, the supplying of a "defective instrumen-
tality," the failure to warn of a "dangerous instru-
mentality," allowing a "dangerous and defective"
condition to exist, failing to repair or inspect, and
"violation of the pertinent provision of the Re-
statement of Torts, including but not limited to
§402A."

Discovery proceeded and on May 9, 1978,
Thomas Muller was deposed. Muller testified that
for 14 months prior to the accident he was employed
as a "fueler" by the Dennis Trucking Co. at the
premises of D. J. McNichol (additional defendant)
located at 25th and Moore Streets in Philadelphia.
His job was to pump diesel fuel into tractors oper-
ated by the trucking concern; he would normally fill
two tractors simultaneously using the two pumps
he had available for that purpose. A lever-switch on
the side of each pump activated the motor of each
pump and reset the respective gauges to zero. When
the tank of the vehicle was full, a switch in the
nozzle at the discharge end of the hose from the
pump would automatically shut off the flow of fuel.

About three weeks before the accident, the on-off
lever of one of the pumps ceased to function. The
dispatcher was informed of the problem; he told the
"fuelers" that it would be taken care of, but, in the
meantime, "use the pump like you had to." Muller
took this to mean that he would have to take the
safety cover off the side of the pump with the broken
lever and manually activate it by manipulating a
thin rod inside the mechanism which connected
the inoperable lever to the pump's motor. However,
Muller did not know if the supervisor actually knew

he and the other "fuelers" were using this technique. Muller stated it was necessary for him to use both the "broken" as well as the other normally operable pump to fuel the 50 to 60 tractors he was required to service each night.

Muller admitted that previously he had been instructed not to remove the safety cover, and he knew there was moving machinery inside the fuel dispensing equipment. He was also aware of the warning appearing on the cover which cautioned against removal. Despite this knowledge, he never objected to any supervisor about turning the pump on and off by taking the safety cover off and manipulating the internal mechanism. On February 8, 1972, while Muller was in the act of turning off the pump by moving the internal rod, one of his fingers got caught between a pulley and belt causing the injuries presently complained of. At the time of the accident he could see the pump mechanism clearly, the safety cover being fully removed, and was not speaking to anyone.[1]

---

1. An affidavit by a Mobil official indicates that on the date of the alleged accident the pump was owned by Mobil but was in the possession of D. J. McNichol pursuant to a lease agreement. The official further asserts that maintenance and repairs to the pump were performed by defendant Midstates Equipment Corp., an independent contractor paid by Mobil. However, Muller testified at deposition that after the lever broke, but before his accident, a serviceman who said he was from Mobil (but who was not otherwise identified as a Mobil employe) inspected that pump but did not repair it. These assertions are not material to our disposition of the instant motion and were not considered by the court. However, we agree with plaintiff that the affidavit was defective. Paragraph 8 of the affidavit states: "The facts set forth above which are within deponent's personal knowledge are true and the facts set forth

It is fundamental that summary judgment may only be granted when the depositions, answers to interrogatories, admissions, affidavits based upon personal knowledge, and the uncontroverted allegations of the pleadings reveal no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The court must evaluate the evidence in the light most favorable to the nonmoving party, granting summary judgment only where the right is clear, and resolve all doubts against the entry of jugdment: Pa.R.C.P. 1035; Phaff v. Gerner, supra; Amabile v. Auto Kleen Car Wash, 249 Pa. Superior Ct. 240, 376 A. 2d 247 (1977). As plaintiff has not submitted affidavits, depositions, or the like in opposition to the motion, the facts presented by Muller in his deposition (submitted by Mobil) must be taken as verity. These facts must either destroy the prima facie case of plaintiff or present a complete defense to the action for the motion to be successful: Amabile v. Auto Kleen Car Wash, supra at 250-1. Because we believe that plaintiff's testimony at deposition clearly establishes the affirmative defense of assumption of risk, we grant summary judgment in favor of Mobil.

Plaintiff's complaint predicates Mobil's liability upon both negligence (e.g., failure to inspect or repair) and products liability (e.g., supplying a defective instrumentality and failure to warn) theories.

---

which are within the knowledge of others are true to the best of deponent's knowledge, information and belief." This statement does not meet the requirements of Pa.R.C.P. 1035(d) for an affidavit used in support of a motion for summary judgment, as that rule (echoing Pa.R.C.P. 76) provides that such affidavits shall be made on "personal knowledge" *only*. See Phaff v. Gerner, 451 Pa. 146, 150, 303 A. 2d 826 (1973).

Assumption of the risk is a valid defense to both theories of liability. See Whitley v. Philadelphia Transportation Co., 211 Pa. Superior Ct. 288, 234 A. 2d 922 (1967) (negligence); Ferraro v. Ford Motor Co., 423 Pa. 324, 223 A. 2d 746 (1966) (products liability). The defense is applicable whether the defendant is plaintiff's employer or otherwise: Green v. Sanitary Scale Co., 431 F. 2d 371 (3d Cir. 1970) (citing cases).

A plaintiff who voluntarily assumes a risk of harm arising from negligent or reckless conduct cannot recover for such harm: Restatement, 2d, Torts, §496A.[2] Assumption of a risk requires a knowing awareness and appreciation of a danger which is then voluntarily encountered. Cf. Elliot v. Philadelphia Transportation Co., 160 Pa. Superior Ct. 291, 50 A. 2d 537 (1947). This involves a subjective evaluation of what the particular plaintiff did in fact see, know, understand and appreciate, as differentiated from the "reasonable man" objective standard applied in evaluating contributory negligence: Restatement, 2d, Torts, §496D, comment c; see also Joyce v. Quinn, 204 Pa. Superior Ct. 580, 585-6, 205 A. 2d 611 (1964); Elliot v. Philadelphia Transportation Co., supra. The Restatement illustrates the difference with a hypothetical situation similar to the one instantly posed:

---

2. Assumption of risk is primarily covered by Chapter 17A (§§ 496A-G) of the Restatement, 2d, Torts. The scope note to Chapter 17A specifically states that it is only concerned with assumption of the risk arising from negligent or reckless conduct. Despite this restriction, the courts have often cited sections of Chapter 17A and the comments thereto in the products liability context. See, e.g., Draper v. Airco, Inc., 580 F. 2d 91 (3d Cir. 1978); Elder v. Crawley Book Machinery Co., 441 F. 2d 771 (3d Cir. 1971).

"For example, an independent contractor who finds that he has been furnished by his employer with a machine which is in dangerous condition, and that the employer, after notice, has failed to repair it or to substitute another, may continue to work with the machine. He may not be negligent in doing so, since his decision may be an entirely reasonable one, because the risk is relatively slight in comparison with the utility of his own conduct; and he may even act with unusual caution because he is aware of the danger. The same policy of the common law which denies recovery to one who expressly consents to accept a risk will, however, prevent his recovery in such a case." Restatement, 2d, Torts, §496A, comment c-3.

The standard to be applied in evaluating assumption of the risk is not as clear in the products liability area. The assumption of risk doctrine has undergone transformation since it was first recognized in Pennsylvania as a defense to a Restatement, 2d, Torts, §402A, products liability action in Ferraro v. Ford Motor Co., supra. In Ferraro it was held that "if the buyer knows of the defect and *voluntarily* and *unreasonably* proceeds to use the product or encounter a known danger, this should preclude recovery and constitute a complete defense to the action even in the cases of strict liability."[3] (Em-

---

3. See also Bartkewich v. Billinger, 432 Pa. 351, 247 A. 2d 603 (1968), in which a product not equipped with a safety barrier to prevent a user from voluntarily putting himself at an obvious risk of danger was found not to be defectively designed under section 402A. Though often cited as an assumption of the risk case, see, e.g., Colosimo v. May Department Store Co., 466 F. 2d 1234, 1238 (3d Cir. 1972) (Aldisert, *J.*, dissenting), Bartkewich actually injects assumption of risk into the misuse doctrine to reach its result.

phasis in original.) This language substantially follows comment n to §402A, which states, in pertinent part:

"[T]he form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery." See Elder v. Crawley Book Machinery Co., 441 F. 2d 771 (3d Cir. 1971); Prosser, Torts (4th ed. 1971), 670-71, §102.

The Ferraro formulation of the assumption doctrine requires the user or consumer to discover the defect, be aware of the danger it poses, and then *unreasonably* make use of the product. Comment n to section 402A refers to assumption of the risk so defined as a form of contributory negligence. These formulations confuse contributory negligence, which alone is not a defense to products liability, with assumption of the risk, which is. No consideration is to be made of the reasonableness of a plaintiff's action in voluntarily proceeding to meet a known danger caused by a defect. As in the situation where assumption of risk is considered as a defense to liability for negligent conduct, a finding of assumption of risk in a products liability action "must be based on the individual's own subjective knowledge, not upon the objective knowledge of a 'reasonable man.'" Berkebile v. Brantly Helicopter Corp., 462 Pa. 83, 100, 337 A. 2d 893, 901 (1975) (plurality opinion); see Moran v. Raymond Corporation, 484 F. 2d 1008 (7th Cir. 1973); Taylor v.

Paul O. Abbe, Inc., 380 F. Supp. 601 (E.D. Pa. 1974); Clarke v. Brockway Motor Trucks, 372 F. Supp. 1342, 1348 (E.D. Pa. 1974); Dorsey v. Yoder Co., 331 F. Supp. 753 (E.D. Pa. 1971); Henderson v. Ford Motor Co., 519 S.W. 2d 87, 91 (Tex. 1974) ("Assumption of risk is the defense; contributory negligence or failure to act reasonably is not"). A person may voluntarily expose himself to a known risk of injury and not be contributorily negligent because in meeting the risk he acted as a reasonable man would have.

Therefore, the defense of assumption of the risk is governed by the same standard whether a cause of action is predicated on negligence or products liability averments. To bar plaintiff's recovery, defendant must establish that plaintifff voluntarily and willingly confronted and risked injury from a danger of which the particular plaintiff had actual, subjective knowledge and appreciation.[4]

Applying this standard to the present case compels the finding that plaintiff assumed the risk of injury from the pump he was operating. Muller knew of the warnings against removal of the pump's safety cover and the presence of machinery inside. His appreciation of the danger which the interior mechanism posed was demonstrated, inter alia, when he stated his concern for the possibility

---

4. Actual knowledge of *the danger*, but not of *the defect* or of the negligent conduct causing the danger is required. See Green v. Sanitary Scale Co., 431 F. 2d 371 (3d Cir. 1970); Taylor v. Paul O. Abbe, Inc., supra; Clarke v. Brockway Motor Trucks, 372 F. Supp. 1342 (E.D. Pa. 1974); Restatement, 2d, Torts, §402A, comment n; but see Pennsylvania Standard Jury Instruction 8.09 (Civil), Subcommittee Draft (June 6, 1976). A plaintiff would rarely have specific knowing awareness of "defects" (such as inadequate safety guards or warnings) even though fully aware of the dangers posed.

that a curious passerby might get hurt by the internal moving parts. Nevertheless, he deliberately and consciously exposed himself to a risk of harm from the internal moving machinery, known by him to be dangerous, when he placed his hand inside the pump.

Although relatively young at the time of the accident, he had worked as a fueler for fourteen months and was an experienced employe. He did not inadvertently place his hand into the pump's mechanism, but did so intentionally and consciously. See Elder v. Crawley Book Machinery Co., supra.

We reject plaintiff's argument which seeks to have us conclude that Muller may not have *voluntarily* assumed the risk because he was compelled to use the pump without the safety cover due to the threat of loss of employment.

Muller did not testify that his employer ever explicitly demanded that he use the pump, nor did Muller ever object to using the broken pump. The implied threat of a loss of employment which plaintiff asserts is merely self-serving speculation and conjecture, and is insufficient to support a claim of economic "coercion" even upon a motion for summary judgment. Furthermore, some measure of protest against the risk (or demand for repair) is required before a plaintiff can assert his employer coerced him into facing the risk. Cf. Ferraro v. Ford Motor Co., supra, citing Restatement, 2d, Torts, §496E, comment a. Therefore, even if we assume *arguendo* that "economic coercion" negates the voluntariness of assumption of the risk, plaintiff has not established (by opposing affidavit, deposition or otherwise) a question of fact as to such economic coercion.

However, we do not believe that economic coercion can vitiate the voluntariness component of as-

sumption of risk, at least in the situation where the defendant raising the defense was not plaintiff's employer. Thus, even if the instant plaintiff had presented sufficient evidence to raise a question of fact as to his economic duress, our conclusion would not be altered.

The appellate courts of Pennsylvania have not yet addressed this issue. Nevertheless, in Draper v. Airco, Inc., 580 F. 2d 91 (3d Cir. 1978), Judge Higginbotham, attempting to predict Pennsylvania law, did conclude that "economic duress can vitiate the voluntariness of an assumption of risk." See also Hennigan v. Atlantic Refining Co., 282 F. Supp. 667 (E.D. Pa. 1967), aff'd 400 F. 2d 857 (3d Cir. 1968), cert. den. 395 U.S. 904 (1969) (dictum). We disagree with this broad conclusion.

The Draper opinion apparently proceeded on the assumption that the defenses of contributory negligence and assumption of the risk are similar and overlapping in nature.[5] See Draper, supra at 102, n. 12. As discussed supra, this is an incorrect assumption because reasonableness is not a consideration in determining assumption of the risk, as it is in contributory negligence. Thus, the reliance in Draper[6] upon Pennsylvania cases holding that

---

5. This is justifiable if the rule described in comment n to §402A is followed as it was in Ferraro v. Ford Motor Co., supra, and Ellithorpe v. Ford Motor Co., 503 S.W. 2d 516 (Tenn. 1973). See Henderson v. Ford Motor Co., supra.

6. At least one other court which has accepted the economic coercion argument explicitly based its reasoning upon the *reasonableness* of the workman in encountering a known risk of harm because of employer pressure: Brown v. Quick Mix Co., 75 Wash. 2d 833, 454 P. 2d 205 (1969).

"compelling necessity" may be a consideration in determining contributory negligence is misplaced.[7]

Compelling necessity, in the form of maintaining a job and earning a living, may affect the "reasonableness" of a decision to confront a known danger. The ordinarily prudent person, when directed to work with a dangerous instrumentality or be dismissed, may reasonably decide that his job is more important to him and his family than standing on an objection against working with an instrumentality (or in an occupation) which presents a risk of harm. But the reasonable necessity or propriety underlying this decision cannot be considered in determining if the risk was voluntarily assumed. "The plaintiff's acceptance of the risk is to be regarded as voluntary even though he is acting under the compulsion of circumstances, not created by the tortious conduct of the defendant, which have left him no reasonable alternative." Restatement, 2d, Torts, §496E, comment b.

We do not go so far as to state that economic duress can never be considered in determining whether a plaintiff acted in a truly voluntary and free manner. As comment b to section 496E, supra,

---

7. Support for the holding in Draper can also be found in the principle that in determining whether one injured in the course of employment has been *contributorily negligent*, the court is bound to consider all the circumstances incident to the working conditions of the employe, *including his obligation to do his job:* Quinn v. Kumar, 437 Pa. 268, 263 A. 2d 458 (1970); Gregorius v. Safeway Steel Scaffolds Co., 409 Pa. 578, 187 A. 2d 646 (1963); Atkins v. Urban Redevelopment Authority of Pittsburgh, ＿＿＿ Pa. Superior Ct. ＿＿＿, 396 A. 2d 1364 (1979). These cases are similarly inapposite to assumption of the risk as the obligation to do the job is an element of reasonableness.

recognizes, an employer who compels an employe under threat of dismissal to risk a danger may well be foreclosed from the assumption defense. The superior bargaining position of the employer must be recognized in such a case. Public policy also dictates against relieving an employer from his obligation to furnish safe working conditions through his own coercive actions. But in the instant situation, it is not asserted that Mobil exerted any pressure upon Muller to work with the allegedly defective and unrepaired pump.

If any economic duress was exerted against Muller, it was by his employer, and Mobil should not be required to have foreseen such coercion or bear responsibility for it. See Willis v. Eckert Packing Co,. 21 Ohio App. 2d 117, 255 N.E. 2d 309 (1969). Mobil's obligation to supply and maintain a safe instrument was waived when Muller chose to chance the danger posed by blindly exposing his hand to the interior workings of the pump.

As we have decided that plaintiff is barred from recovery from Mobil because he voluntarily assumed the risk of injury, we do not address the question as to whether operating the pump without its cover constituted a misuse sufficient to defeat plaintiff's claim that the pump was defective and that such defect was the proximate cause of his injury. See Berkebile v. Brantly Helicopter Corp., supra; cf. Kuisis v. Baldwin-Lima-Hamilton Corp., 457 Pa. 321, 319 A. 2d 914 (1974) (decided before the modern trend in Pennsylvania products liability law stated in Berkebile, supra, and Azzarello v. Black Brothers Co., Inc., 480 Pa. 547, 391 A. 2d 1020 (1978)); see generally, Bryan v. John Bean Div. of FMC Corp., 566 F. 2d 541 (5th Cir. 1978); Raney v. Honeywell, Inc., 540 F. 2d 932 (8th Cir.

1976) (Iowa law); Latimer v. General Motors Corp., 535 F. 2d 1020 (7th Cir. 1976); Thomas v. American Cytoscope Makers, Inc., 414 F. Supp. 255 (E.D. Pa. 1976); Sun Valley Airlines, Inc. v. Avco-Lycoming Corp., 411 F. Supp. 598 (D. Idaho 1976); General Motors Corp. v. Hopkins, 548 S.W. 2d 344 (Tex. 1977); Horn v. General Motors Corp., 17 Cal. 3d 359, 131 Cal.Rptr. 78, 551 P. 2d 398 (1976).

Wherefore, we enter the following

## ORDER

And now, June 28, 1979, upon consideration of defendant Mobil Oil Corporation's motion for summary judgment, the answers of plaintiff and additional defendant D. J. McNichol Co., and oral argument held, it is hereby ordered and decreed that said motion is granted and summary judgment be entered for defendant Mobil Oil Corporation and against plaintiff Thomas Muller.